UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BIANCA BROWN                                                                    Docket No.:

                                        Plaintiff,

            -against-                                                      **VERIFIED COMPLAINT**

THE COUNTY OF WESTCHESTER,
OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY,
DISTRICT ATTORNEY MIRIAM E. ROCAH individually and officially,
FORMER DISTRICT ATTORNEY ANTHONY A. SCARPINO individually and officially,
SHAMEIKA M. MATHURIN individually
ADEEL MIRZA individually,
and CYNTHIA A. ADIMARI individually,

                                                                          Filed on:_____

                                        Defendants.
--------------------------------------------------------------------X

     Plaintiff BIANCA BROWN (hereinafter referred to as "Plaintiff" or "Ms. Brown"), by and through her undersigned counsel, THE COCHRAN FIRM, as and for Plaintiffs' Verified Complaint in this action against the Defendants **THE COUNTY OF WESTCHESTER, THE OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY**, **DISTRICT ATTORNEY MIRIAM E. ROCAH (individually and officially)**, **FORMER DISTRICT ATTORNEY ANTHONY A. SCARPINO (individually and officially)**, **SHAMEIKA M. MATHURIN (individually)**, **ADEEL MIRZA (individually)**, **and CYNTHIA A. ADIMARI (individually)**(hereinafter all collectively referred to as "**Defendants**") hereby alleges as follows:

## NATURE OF THE CLAIMS

This is a civil action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including their discriminatory treatment, harassment, hostile work environment, wrongful termination, and unlawful retaliation against the Plaintiff due to her race, color, sex and gender, and her status as a

whistleblower, in violation of the Title VII of the Civil Rights Act of 1964, as codified, 42

U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.

L. No. 102-166) ("Title VII"), 42 U.S.C. §1981, 42 U.S.C §1983 and to remedy violations of the

New York State Human Rights Law; New York Executive Law, § 290, *et seq.* ("the Executive

Law"); and the Administrative Code of the City of New York 8-107 *et seq.* ("NYCHRL"); and

New York Labor Law § 740 ("NYLL"). Defendants repeatedly subjected Plaintiff to unlawful

discrimination and a hostile work environment, as well as unlawful retaliation for complaining of

Defendants' unlawful employment practices, complaints of sexual harassment, the unlawful

policy of district attorneys committing violations of ***Brady v. Maryland*** (hereinafter referred to

as "*Brady*" and/or "Brady violations"), and the unlawful policy of the Office of the District

Attorney, Westchester County of refusing to discipline district attorneys who commit

misconduct, including district attorneys who commit violations of *Brady*.

1.      **Defendants'** conduct is knowing, malicious, willful, and wanton and/or shows a reckless disregard

for the Plaintiff.  It has caused and continues to cause the Plaintiff to suffer substantial economic

and non-economic damages, permanent harm to her professional and personal reputations, and

severe mental anguish and emotional distress.


## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in

that the action involves federal questions, because the causes of action asserted herein arise in part

under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title

VII"), 42 U.S.C. § 1981 ("1981"), and 42 U.S.C. § 1983 ("1983"), to remedy violations of the laws

of the State of New York based upon Federal Questions and the supplemental jurisdiction of this

Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, retaliated against, and unlawfully terminated by Plaintiff's former employers on the basis of Plaintiff's race, sex and gender, as well as a hostile work environment.

3.     28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4.     Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate state and local claims pursuant to 28. U.S.C. 1967. The matter in controversy exceeds, exclusive of interests and costs, the sum of One Hundred Thousand Dollars ("$100,000").

5.     Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

## PROCEDURAL REQUIREMENTS

6.     Plaintiff filed a charge with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") with respect to the herein charges of harassment and discrimination on or about October 7, 2021(hereinafter referred to as "EEOC Charge No. 520-2022-00768").

7.     On or about April 28, 2022, Plaintiff received a Notice of Right to Sue letter (hereinafter referred to as "Plaintiff's said Notice of Right to Sue letter") from the EEOC for EEOC Charge No. 520-2022-00768.

8.     Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Notice of Right to Sue letter.

## PARTIES

*The Plaintiff*

9.      Plaintiff BIANCA BROWN (hereinafter referred to as "Plaintiff Brown" and/or "Ms. Brown"), is an individual African American female. As a result, Plaintiff is a member of multiple protected classes.

10.     Plaintiff is a resident of the State of New York, who at all times material met the definition of an "employee" of Defendants **THE COUNTY OF WESTCHESTER** and **OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY** under all applicable statutes.

11.     At all times relevant to this Complaint, after July 30, 2022, Plaintiff was and still is, a former employee of Defendants **THE COUNTY OF WESTCHESTER** and **OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY**.

*The Defendant Employers*

12.     At all times material, Defendant **THE COUNTY OF WESTCHESTER** (hereinafter referred to as "Defendant **WESTCHESTER COUNTY**" and/or "**WESTCHESTER COUNTY**" and/or "**the COUNTY**") is a municipal corporation and political subdivision of the State of New York, duly organized under the laws of the state of New York with its principal place of business at 148 Martine Avenue, White Plains, NY 10601.

13.     At all times material, Defendant **WESTCHESTER COUNTY** maintains an office for the investigation and prosecution of criminal offenses known as the Office of the District Attorney, Westchester County.

14.     Defendant **OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY** (hereinafter referred to as "Defendant **WESTCHESTER D.A.'s OFFICE**" and/or "**WESTCHESTER DA**" and/or "**the DA**") is a municipal subdivision of **WESTCHESTER COUNTY**, duly organized under the laws of the County of Westchester and the State of New York

with its principal place of business at 111 Dr. Martin Luther King Jr. Blvd., White Plains, NY 10601.

15. At all times material, Defendants **THE COUNTY OF WESTCHESTER** and **OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY** (hereinafter collectively referred to as "**the Defendant Employers**" and/or "Defendant **WESTCHESTER**" and/or "**WESTCHESTER**") were joint public employers of Plaintiff.

16. At all times material, **WESTCHESTER** meet the definition of an "employer," and/or "joint employer," and/or "single employer" under all applicable state and local statutes.

17. At all times relevant to this Complaint, Plaintiff was an "employee" of **WESTCHESTER** within the meaning of the aforementioned statutes.

18. At all times relevant to this Complaint, **WESTCHESTER** acted by and through their employees, agents, and servants who were acting in the scope and course of employment, agency, and servitude.

*The Individual Defendants (Westchester Employees)*

19. At all times material, **WESTCHESTER** employed Defendant **DISTRICT ATTORNEY MIRIAM E. ROCAH** (hereinafter referred to as "Defendant **ROCAH**" and/or "**ROCAH**") as the WESTCHESTER COUNTY DISTRICT ATTORNEY.   **ROCAH** is also an individual white, Caucasian female.

20. **ROCAH** held, and still holds, a supervisory position at **WESTCHESTER D.A.'s OFFICE**, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, to discipline Plaintiff, and to hire and fire Plaintiff.

21.     **ROCAH** was an active participant in the unlawful discrimination, harassment, hostile work environment, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

22.     At all times material, **WESTCHESTER** employed Defendant **FORMER DISTRICT ATTORNEY ANTHONY A. SCARPINO** (hereinafter referred to as "Defendant **SCARPINO**" and/or "**SCARPINO**") as the WESTCHESTER COUNTY DISTRICT ATTORNEY. **SCARPINO** is also an individual white, Caucasian male.

23.     **SCARPINO** held a supervisory position at **WESTCHESTER D.A.'s OFFICE**, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, to discipline Plaintiff, and to hire and fire Plaintiff.

24.     As Plaintiff's supervisor, **SCARPINO** has also aided and abetted the unlawful conduct described herein.

25.     At all times material, **WESTCHESTER** employed Defendant **SHAMEIKA M. MATHURIN** (hereinafter referred to as "Defendant **MATHURIN**" and/or "**MATHURIN**") as an Assistant District Attorney at **WESTCHESTER D.A.'s OFFICE**.

26.     **MATHURIN** held, and still holds, a supervisory position at **WESTCHESTER D.A.'s OFFICE**, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, to discipline Plaintiff, and to hire and fire Plaintiff.

27.     **MATHURIN** was an active participant in the unlawful discrimination, harassment, hostile work environment, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

28. At all times material, **WESTCHESTER** employed Defendant **ADEEL MIRZA** (hereinafter referred to as "Defendant **MIRZA**" and/or "**MIRZA**") as an Assistant District Attorney at **WESTCHESTER D.A.'s OFFICE**. MIRZA is an individual Middle Eastern male.

29. **MIRZA** held, a supervisory position at **WESTCHESTER D.A.'s OFFICE**., controlling many tangible aspects of Plaintiff' job duties, including holding the power to control Plaintiff's work, to discipline Plaintiff, and to hire and fire Plaintiff.

30. **MIRZA** was an active participant in the unlawful discrimination, harassment, hostile work environment, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

31. At all times material, **WESTCHESTER** employed Defendant **CYNTHIA A. ADIMARI**, (hereinafter referred to as "Defendant **ADMIARI**" and/or "**ADIMARI**") as an Assistant District Attorney at **WESTCHESTER D.A.'s OFFICE**. **ADIMARI** is an individual white, Caucasian female.

32. **ADIMARI** held, and still holds, a supervisory position at **WESTCHESTER D.A.'s OFFICE**, controlling many tangible aspects of Plaintiff' job duties, including holding the power to control Plaintiff's work, to discipline Plaintiff, and to hire and fire Plaintiff.

33. **ADIMARI** was an active participant in the unlawful discrimination, harassment, hostile work environment, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

34. Defendants **ROCAH**, **SCARPINO**, **MATHURIN**, **MIRZA** and **ADIMARI** are hereinafter collectively referred to as "**the individual Defendants**" and/or "**the WESTCHESTER Employees**".

35.  **The individual Defendants** acted in violation of Plaintiff's rights under color of the statutes, ordinances, customs and usage of the State of New York, County of Westchester, and within the scope of their employment.

## FACTUAL ALLEGATIONS

*Sexual Harassment (Gender) and Retaliation*

36.  In or around late June 2019, a panel of three (3) senior **WESTCHESTER D.A.'s OFFICE** Assistant District Attorneys (hereinafter referred to as "ADA" and/or "prosecutor"), including **MIRZA** interviewed Plaintiff for a job as a prosecutor (hereinafter referred to as "Plaintiff's panel interview").

37.  On or about November 18, 2019, **WESTCHESTER** hired Plaintiff as a prosecutor and assigned her to Motions and Appeals before moving her to the Local Court Division a few weeks later.

38.  At all times material, Plaintiff was qualified for her position as prosecutor.

39.  At all times herein, Plaintiff was an exemplary employee who did not disobey orders or directives from her superiors. Plaintiff performed all duties assigned in a diligent and upstanding manner.

40.  Throughout Plaintiff's panel interview and following Plaintiff's hiring by Defendants, she was subjected to unwelcomed sexual assault, sexual harassment and inappropriate sexual advances and sexual contact.

41.  At all times relevant, **MIRZA** subjected Plaintiff to routine unwelcomed sexual harassment and highly inappropriate sexual comments. **MIRZA** discriminated against Plaintiff solely due to her gender.

42.  By way of example, immediately following Plaintiff's panel interview, **MIRZA** reached out to Plaintiff via an unsolicited e-mail.

43. However, the other interview panelists did not reach out with similar unsolicited, unwelcome, and unwanted contact.

44. By way of further example, throughout the beginning of Plaintiff's employment with **WESTCHESTER**, **MIRZA** subjected her personal cellphone to a barrage of harassing, unwelcome, and unwanted text messages inviting her for drinks.

45. **MIRZA** attached at least one (1) photograph of himself to these harassing, unwelcome, and unwanted text messages.

46. **MIRZA** continuously sent Plaintiff unsolicited, unwelcome, and unwanted invitations for drinks.

47. On or about November 22, 2019, Plaintiff agreed to meet **MIRZA**, in the hopes of shutting down, in person, **MIRZA's** emerging routine of unwanted sexual harassment.

48. **MIRZA** instructed Plaintiff to meet him at a nearby bar.

49. Immediately upon meeting at the bar, **MIRZA** subjected Plaintiff to an onslaught of racially discriminatory and sexually abusive comments.

50. **MIRZA** offered to purchase unwanted drinks for Plaintiff multiple times while at the bar.

51. **MIRZA's** breath was nauseating with the pungent stench of alcohol.

52. In a thinly-veiled offer for *quid pro quo* sexual contact, **MIRZA** showed Plaintiff a copy of the evaluation he submitted on her behalf following her June 2019 interview (hereinafter referred to as "the said positive evaluation").

53. **MIRZA's** action in showing Plaintiff the said positive evaluation is tied to the obvious implication that he held power over Defendants' ability to hire and to fire Plaintiff.

54. To be absolutely clear, **MIRZA** treated Plaintiff's panel interview as his own personal casting couch.[1] **MIRZA** sought to exploit the power he held over Plaintiff in order to subject her to sexual harassment.

55. **MIRZA** repeatedly commanded Plaintiff to move in closer while showing Plaintiff the said positive evaluation.

56. Plaintiff informed **MIRZA** that she had a boyfriend in hopes of putting a stop to his sexual harassment.

57. However, **MIRZA** was undeterred and continued to sexually harass Plaintiff.

58. **MIRZA**'s unwanted, unwelcome sexual advances made Plaintiff visibly uncomfortable.

59. **MIRZA** attempted to ply Plaintiff with alcohol and evidence he held power over her employment at WESTCHESTER, in the expectation it would lead to sexual contact.

60. **MIRZA**'s *quid pro quo* attempt was discriminatory, harassing, and a violation of office confidentiality policy.

61. **MIRZA** told Plaintiff "**THE ONLY WAY FOR YOU [PLAINTIFF] TO SUCCEED IN [WESTCHESTER DA'S OFFICE] IS TO *BECOME CLOSE* TO PEOPLE LIKE ME. STICK WITH ME**," or words to that effect.

62. **MIRZA** subjected Plaintiff to racially discriminatory unwanted questions like "**WHAT IS YOUR RACE**?" and "**ARE YOU HISPANIC**?" or questions to that effect.

63. While Plaintiff found these questions to be invasive and offensive, she didn't want to jeopardize her employment and thus politely answered them.

---

[1] Merriam-Webster, *"Definition of 'casting couch'"*
: a couch in an entertainment executive's office on which aspiring actresses are reputed to perform sexual acts in exchange for desired roles, *broadly*: the practice of abusing one's power to obtain sexual partners, available at https://www.merriam-webster.com/dictionary/casting%20couch, emphasis added

64. **MIRZA** also subjected Plaintiff to racially discriminatory statements like "**I *KNOW* YOU'RE NOT WHITE,**" and "**LOTS OF PEOPLE AT THE OFFICE ARE CURIOUS ABOUT YOUR RACE**" and "**THE INTERVIEW PANELISTS HAD QUESTIONS ABOUT YOUR RACE WHILE THEY CONSIDERED YOU AS A CANDIDATE FOR EMPLOYMENT**" or statements to that effect.

65. Plaintiff objected to **MIRZA**'s racially discriminatory comments.

66. **MIRZA** also subjected Plaintiff to sexually-charged unwanted statements like "**COME ON, WE CAN ALL TELL, *FOR OBVIOUS REASONS,* THAT YOU AREN'T WHITE**" or statements to that effect.

67. Plaintiff objected to **MIRZA**'s sexually harassing comments.

68. At one point **MIRZA** went to the restroom and Plaintiff immediately prepared to leave the bar.

69. Plaintiff felt distressed about being racially discriminated against and sexually harassed by **MIRZA** and was eager to prevent the possibility of further discrimination and harassment by **MIRZA**.

70. While Plaintiff prepared to leave, **MIRZA** returned from the bathroom.

71. Plaintiff announced her departure.

72. In response, **MIRZA** forced his arm around Plaintiff's waist and aggressively shoved his hand down the back of her pants.

73. With his hand placed on Plaintiff's buttocks, **MIRZA** then leaned in and demanded to know "**WHY ARE YOU[PLAINTIFF] SO AFRAID OF ME**?"

74. Plaintiff had not invited **MIRZA**'s sexual contact.

75. Plaintiff had not wanted **MIRZA**'s sexual contact.

76. Plaintiff had not welcomed **MIRZA**'s sexual contact.

77. Plaintiff immediately objected to **MIRZA**'s sexual assault, and left the bar.

78. Plaintiff was extremely upset and offended by these incidents and never expected to be the target of such repulsive behavior when she accepted the job with Defendants.

79. Plaintiff consistently objected to **MIRZA**'s vile and illegal behavior, and Plaintiff *always* rebuffed and/or physically repelled his crude, vulgar, disgusting and traumatizing sexual advances and assaults.

80. Plaintiff later reported **MIRZA**'s racial and sexual discrimination, harassment, and sexual assault to a colleague at **WESTCHESTER D.A.'s OFFICE**, Mr. Victor Olds (hereinafter referred to as "Mr. Olds" and/or "Olds"). Mr. Olds was one of **WESTCHESTER**'s highest-ranking deputy prosecutors.

81. Mr. Olds lodged an internal complaint with **WESTCHESTER D.A.'s OFFICE** on Plaintiff's behalf (hereinafter referred to as "Plaintiff's sexual harassment complaint").

82. In or around December 2019, Plaintiff met with two high-ranking female **WESTCHESTER** deputy prosecutors to discuss Plaintiff's sexual harassment complaint.

83. It would be useful to recall that **WESTCHESTER D.A.'s OFFICE** is a law enforcement agency, whose primary mission is to prosecute crimes, including, *inter alia*, sexual assault.

84. However, despite Plaintiff's complaint, Defendants took no immediate and/or appropriate corrective action with respect to **MIRZA's** racial discrimination, gender discrimination, sexual assault, and/or sexual harassment.

85. Defendants refused to discipline **MIRZA** or issue any write-up or even a verbal reprimand for his racial discrimination, gender discrimination, sexual assault, and/or sexual harassment of Plaintiff and/or other black, African-American and/or female employees.

86. Instead, Defendants responded to Plaintiff's sexual harassment complaint with a retaliatory onslaught that included, *inter alia*, fabricating reasons to issue negative performance reviews from her supervisors, as well as further discriminatory conduct and comments, resulting in a hostile work environment.

87. Defendants retaliated against Plaintiff for engaging in protected activity by complaining about their discriminatory misconduct.

88. Upon information and belief, black and African-American employees, such as Plaintiff, who complained about discrimination and harassment by **WESTCHESTER** were retaliated against, while white, Caucasian employees who complained about discrimination and harassment by **WESTCHESTER** were not similarly retaliated against.

89. Upon information and belief, at the time of Plaintiff's complaint, **MIRZA** was close friends with many supervisory and executive level prosecutors within **WESTCHESTER D.A.'s OFFICE**.

90. Upon information and belief, the said high-level ADAs remained friends with **MIRZA** following Plaintiff's sexual harassment complaint.

91. **MIRZA**'s high-level ADA friends are hereinafter collectively referred to as "the said high-level ADAs."

92. Defendants, including a number of the said high-level ADAs, subjected Plaintiff to a number of adverse employment actions in retaliation for Plaintiff's EEO complaint including, *inter alia*, disruptions to her work schedule, saddling her with excessive additional responsibilities tied to unreasonable deadlines pursuant to fabricating reasons for reprimands, and unjustifiably disproportionately low salary increases.

93. By way of example, Defendants scheduled days on which Plaintiff was required to attend **WESTCHESTER D.A.'s OFFICE** virtually and then deliberately required her to attend **WESTCHESTER D.A.'s OFFICE** in person in contradiction to her scheduled days.

94. By way of example, on or about July 8, 2020, Defendants subjected Plaintiff to unjustified and unwarranted reprimand.

95. Throughout her employment with Defendants, Plaintiff always received compliments for her work performance and always got along well with all of her coworkers.

96. Prior to this conversation, Defendants had not subjected Plaintiff to complaints about her expertise or performance.

97. By way of example, on or about July 20, 2020, Plaintiff observed that she was being required to do more work than her male co-workers and co-workers who had not engaged in protected activity.

98. By way of example, throughout November 2020, Defendants assigned Plaintiff four (4) times as much work as her similarly situated male, white, and Caucasian co-workers.

99. Further, in or around November 2020, Defendants ambushed Plaintiff with trials on dates that conflicted with her vacation days, deliberately leaving her less time than needed to prepare the case.

100. By way of another example, MATHURIN, who was Plaintiff's direct supervisor at the time, solely assigned Plaintiff to handle night court on a weekly basis.

101. Defendants subjected Plaintiff to these unlawful actions on the basis of her race, color, gender and due to the fact that she engaged in protected conduct.

*Race Discrimination and Retaliation*

102. By way of further example, in or around February 2021, Defendants reassigned Plaintiff to Rye, which was universally seen as a step backwards for Plaintiff's career.

103.   Additionally, Defendants assigned Plaintiff disproportionate night court duties at Rye.

104.   Additionally, Defendants assigned Plaintiff as **ADIMARI**'s subordinate at Rye.

105.   Upon information and belief, **ADIMARI**[2] was, and still is, one of the said high-level ADAs, and an especially close friend of **MIRZA**.

106.   **ADIMARI** is a manipulative, controlling, abusive individual, who was enraged by Plaintiff's protected conduct and, in response, actively sought to use her position of authority to retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff.

107.   On or about April 27, 2021, Defendants assigned Plaintiff to investigate a matter involving a Desk Appearance Ticket charging a criminal defendant (hereinafter referred to as "the said criminal defendant") with menacing and harassment charges against his neighbor (hereinafter referred to as "the said neighbor").

108.   Plaintiff conducted her own investigation into the charges and learned that the Larchmont Police Department (hereinafter referred to as "LPD") was aware that the wife of the said criminal defendant placed a 911 call in which she reported her husband being attacked by the said neighbor on their property.

109.   However, ignoring the cross-complaint, only the criminal defendant was charged and not the said neighbor.

110.   Recognizing that lawful procedure required both parties involved in the incident to be arrested and charged, Plaintiff investigated the matter further, and discovered a photo in the case file which showed the said neighbor choking the said criminal defendant, as well as sworn statements from witnesses indicating that the said neighbor entered the said criminal defendant's property without permission and started the altercation.

[2] Plaintiff's direct supervisor.

111. Plaintiff conducted a series of interviews with the arresting officer from the LPD (hereinafter referred to as "the arresting officer") about the circumstances surrounding this arrest.

112. The arresting officer informed Plaintiff that he was aware of the cross-complaint made in the case, but LPD was too short-staffed to effect a second arrest.

113. The arresting officer also indicated that his own observations and witnesses at the scene of the incident convinced him that the neighbor was the initial aggressor.

114. Plaintiff immediately relayed the potentially exculpatory evidence to her supervisor, **ADIMARI**, knowing that this information was required to be turned over as soon as it was received without delay pursuant to section 245.20 of the New York State Criminal Procedure Law (hereinafter referred to as "NYCPL")

115. **ADIMARI** stated "**I SEE NO PROBLEMS WITH THE CASE**" in response.

116. Plaintiff recognized that failing to disclose evidence casting serious doubt on the reliability of the only dispositive piece of evidence in a criminal matter was a failure of her obligation as a prosecutor to protect the public health and welfare and amounted to a *Brady* violation.

117. Plaintiff was horrified that Defendants were responsible for such violations because such violations leave members of the public vulnerable to unlawful arrests and wrongful convictions by the very authorities responsible for their protection.

118. Plaintiff insisted that **ADIMARI** speak with the arresting officer so that a *Brady* violation disclosure letter could be sent to the defense attorney on the case.

119. On or about April 28, 2021, Plaintiff, **ADIMARI** and the arresting officer conducted a conference call during which **ADIMARI** coached the arresting officer into giving a different version of the facts in an attempt to cover the exculpatory evidence.

120. At the end of the said conference call, **ADIMARI** told Plaintiff "**SEE, SOMETIMES YOU JUST NEED TO *GUIDE* THEM A LITTLE BIT**" in reference to her coaching the arresting officer.

121. In a separate call the arresting officer admitted to Plaintiff that he had a non-professional allegiance to, and family connection with, **ADIMARI**. Plaintiff's co-workers and **ADIMARI** herself confirmed this family connection.

122. Plaintiff again told **ADMIARI** that a *Brady* violation disclosure letter needed to be drafted to include the different versions of events provided by the arresting officer.

123. On or around May 6, 2021, **ADIMARI** spoke with Plaintiff about composing a letter, but insisted that the letter be titled "Disclosure Letter" rather than "*Brady* Violation."

124. Plaintiff was not comfortable with this distinction, as it was a clear attempt to violate the law.

125. However, feeling trapped by her direct supervisor's instructions, Plaintiff drafted a disclosure letter for **ADIMARI** to review (hereinafter referred to as "Plaintiff's original draft disclosure letter").

126. Plaintiff's original draft disclosure letter incorporated the arresting officer's statements in order to accurately portray the facts in issue.

127. Shortly thereafter, **ADIMARI** returned a disclosure letter to Plaintiff (hereinafter referred to as "**ADIMARI**'s disclosure letter").

128. Due to several edits **ADIMARI** made to Plaintiff's original draft, **ADIMARI**'s disclosure letter did not resemble Plaintiff's original draft disclosure letter.

129. Unlike Plaintiff's original draft disclosure letter, **ADIMARI**'s disclosure letter did not accurately portray the arresting officer's statements.

130. **ADIMARI**'s disclosure letter deliberately concealed the exculpatory nature of the arresting officer's statements.

131.   To be absolutely clear, **ADIMARI**'s disclosure letter was an exercise in government suppression of favorable evidence for a defendant.

132.   Plaintiff engaged in protected conduct by calling **MATHURIN**, the deputy division chief at the time, to communicate her refusal to sign **ADIMARI**'s disclosure letter on the grounds that it was deliberately inaccurate.

133.   On or about May 7, 2021, Plaintiff again engaged in protected conduct by emailing **ADIMARI** her refusal to sign **ADIMARI**'s disclosure letter on the grounds that it was deliberately inaccurate.

134.   Upon information and belief, the said criminal defendant had previously been subject to a conviction, under **ADIMARI** which was subsequently overturned.  As a result, **ADMIARI** held a personal vendetta against the said criminal defendant and her unreasonable behavior towards Plaintiff and in attempting to conceal the exculpatory evidence was a consequence of her twisted desire for vindication.

135.   In response to Plaintiff's protected conduct, **ADIMARI** began a retaliatory onslaught of adverse employment actions.

136.   By way of example, on or about May 7, 2021, **ADIMARI** subjected her office to a tantrum, whereby she stalked the halls of **WESTCHESTER D.A.'s OFFICE** violently slamming doors and aggressively screaming statements intended to publicly impugn Plaintiff's character, while other **WESTCHESTER** employees were present, including Plaintiff's co-workers Sam Malebranche and Sharlene Bailon, who heard **ADIMARI**'s false statement concerning Plaintiff, and understood it to be defamatory of Plaintiff. Malebranche and Bailon called Plaintiff and warned her about coming into the office in light of **ADIMARI**'s behavior, calling it an "angry rampage," or words to that effect.

137. With an entire division of Plaintiff's co-workers assembled, **ADIMARI** subjected Plaintiff to the horrific, defamatory accusation that "**[PLAINTIFF] RUINED THE CASE ON PURPOSE.**"

138. Plaintiff categorically did not ruin the case, intentionally or otherwise.

139. To be absolutely clear, the suggestion that Plaintiff intentionally ruined any of her cases not only undervalues Plaintiff's years of education, training, and experience; it is slanderous.

140. **ADIMARI**'s comments were intended to humiliate Plaintiff, and to diminish Plaintiff's professional reputation amongst her co-workers due to the obvious implications of a lack of professionalism, a defective moral character and/or dangerousness, as a discriminatory and retaliatory response to Plaintiff's protected conduct.

141. Plaintiff's male, white, and Caucasian co-workers were not similarly publicly admonished and/or defamed for reporting potential **WESTCHESTER D.A.** violations of the law.

142. **ADIMARI** knew, or should have known, her discriminatory comment concerning Plaintiff was false, made without reasonable grounds for belief in its truth, and without reasonably adequate investigation.

143. **ADIMARI** published the statement maliciously with knowledge of its falsity or with reckless disregard for the truth.

144. **ADIMARI**'s false discriminatory statement injured Plaintiff's reputation among her co-workers, caused severe emotional distress, humiliation, and embarrassment.

145. **ADIMARI**'s discriminatory comments and conduct were extremely offensive and hurtful to Plaintiff, who was at all times a dedicated employee who prioritized professional ethics and integrity.

146. Plaintiff was shocked, humiliated, and mortified by **ADIMARI**'s extremely discriminatory unprofessional and hostile comments and conduct.

147. Plaintiff objected to **ADIMARI**'s comments, complaining directly to **ADIMARI** about her unwarranted and unlawful discriminatory comments.

148. Plaintiff reiterated her prior contentions that, as a prosecutor, it was Plaintiff's professional duty to turn over exculpatory information.

149. However, despite Plaintiff's complaint, Defendants took no immediate and/or appropriate corrective action with respect to **ADIMARI**'s hostile work environment.

150. Defendants refused to discipline **ADIMARI** or issue any write-up or even a verbal reprimand for her hostile, retaliatory misconduct.

151. In response, **ADIMARI** approached Plaintiff, looked her dead in the eyes and uttered the words "**I CAN DO AND SAY WHATEVER I WANT TO YOU, WHENEVER I WANT AND YOU JUST HAVE TO PUT YOUR HEAD DOWN AND TAKE IT. I CAN SPEAK TO YOU HOWEVER I PLEASE, BECAUSE I'M SUPERIOR TO YOU.**"

152. This comment was, and still is, objectionable due to its clearly racially discriminatory overtones.

153. Plaintiff objected to **ADIMARI**'s discriminatory and abusive comment.

154. In response, **ADIMARI** repeated her sentiment that she could speak to Plaintiff in any fashion she chose, because she was better than Plaintiff.

155. On or about May 25, 2021, Defendants, acting through **WESTCHESTER** executives and Plaintiff's supervisors, **WESTCHESTER D.A.'s OFFICE** discharged Plaintiff's employment effective July 30, 2021 (hereinafter referred to as "Plaintiff's pretextual discharge meeting").

156. Defendants, acting through Plaintiff's supervisors, falsely told Plaintiff she was discharged for a number of reasons fabricated by ADIMARI, including that Plaintiff lied about the said criminal defendant's case and tried to conceal the incident with menacing with a firearm.

157. **WESTCHESTER**'s supervisor had authority to make the statement.

158.   Other employees, including **MATHURIN** and **WESTCHESTER** Chief Administrator, PAT D'IMPERIO were present in addition to **WESTCHESTER** Division Chief, ANTHONY MOLEA who was also present, heard these false statements concerning Plaintiff, and understood it to be defamatory of Plaintiff.

159.   Defendants knew or should have known its statement concerning Plaintiff was false, made without reasonable grounds for belief in its truth, and without reasonably adequate investigation. Defendants published the statement maliciously with knowledge of its falsity or with reckless disregard for the truth

160.   Upon information and belief, Defendants' upper management, including **ROCAH** and **ADIMARI**, were involved in the inadequate investigation and the decision to discharge Plaintiff, and expressly authorized the statement.

161.   Defendants' false statement injured Plaintiff's reputation among her former co-workers, caused severe emotional distress, humiliation, and embarrassment, and caused special damages in the form of lost income.

162.   It is hereby claimed that Defendants fabricated the story about Plaintiff's dishonesty in order to create a pretextual reason for terminating Plaintiff.

163.   Plaintiff's termination was proximately caused by the actions of **ADIMARI** as described in paragraphs 132-133 above, which actions were performed with the intent of causing or inducing Plaintiff's termination.

164.   **ADIMARI**'s actions described in paragraphs 132-133 were performed without any justification based upon a legitimate interest of Plaintiff's employer and were performed maliciously and with the sole purpose of retaliating against plaintiff for her reasonable and justified complaints concerning potential violations of the law.

165. Continuing her onslaught of retaliatory misconduct, following Plaintiff's pretextual discharge meeting, **ADIMARI** introduced a policy of alienating Plaintiff.

166. By way of example, on or about May 26, 2021, **ADIMARI** commanded Plaintiff's co-workers to refrain from speaking to her in person or telephonically, and to stop assisting or offering to assist her with any work.

167. **ADIMARI** deliberately sought to cause Plaintiff to feel isolated and to remove all support from Plaintiff at work, which had the purpose and effect of further negatively impacting Plaintiff's work environment.

168. On or about May 26, 2021, the said criminal defendant was arraigned. NYCPL 245.20 required that any *Brady* information known to **WESTCHESTER D.A.'s OFFICE** be disclosed "expeditiously upon its receipt."

169. However, despite Plaintiff relaying relevant *Brady* information to multiple ADAs within the office, **WESTCHESTER D.A.'s OFFICE** withheld exculpatory evidence for several weeks.

170. On or about June 4, 2021, Defendants subjected Plaintiff to Extreme Risk Protection Order (hereinafter referred to as "ERPO") training, in further retaliation for her having engaged in protected conduct.

171. Defendants subjected Plaintiff to ERPO training in order to make an example of her to any other prosecutors contemplating protected conduct.

172. Plaintiff obtained counsel to assist with addressing Defendants' unlawful actions.

173. On or about June 17, 2021, **ROCAH** attempted to force Plaintiff to resign her position, stay on payroll and work from home until July 30, 2021. **ROCAH** also insisted Plaintiff sign a document waiving her right(s) to sue **ROCAH** and **WESTCHESTER D.A.'s OFFICE** (hereinafter referred to as "the said waiver").

174. Upon information and belief, male, and white, Caucasian prosecutors were not treated in this manner for reporting sexual harassment, racial harassment, or potential *Brady* violations.

175. Plaintiff refused to sign the said waiver.

176. On or about June 12, 2021, in retaliation for engaging in protected conduct, Defendants unlawfully terminated Plaintiff.

177. It is clear that despite Plaintiff's excellent work performance, Defendants actually terminated her based on her complaints about Defendants' sexual and racial harassment and discrimination and actual and/or potential *Brady* violations.

178. Plaintiff felt humiliated and intimidated by the illegal harassment of **MIRZA** and **ADIMARI** and was upset and humiliated by Defendants' blatantly unlawful and retaliatory termination.

179. Plaintiff's employment with Defendants was a harrowing, traumatic experience, and rudimentary internet research into **WESTCHESTER** paints a similarly distressing picture of their inability[3] or unwillingness [4] to protect women.

180. The totality of these acts demonstrates a pattern of discrimination intentionally perpetrated by the **WESTCHESTER** management and executive officers against Plaintiff to illegally reduce its work force and/or illegally terminate various employees and created an intimidating, hostile and offensive work environment in violation of Federal laws, New York State laws, local statutes, codes, and ordinances.

181. For a considerable period following her termination Plaintiff was unable to locate permanent work due to Defendants' defamatory statements regarding her work performance and lack of comparable work in the geographic area where Plaintiff resides.

---

[3] Jennifer Peltz "*Investigators blew chances in case of Durst wife's death, D.A. says*" https://www.latimes.com/world-nation/story/2022-01-19/da-investigators-blew-chances-in-case-of-durst-wifes-death
[4] Monique Beals "*Cuomo to face no charges in Westchester despite 'credible' allegations*", available at https://thehill.com/homenews/state-watch/587521-cuomo-to-face-no-charges-in-westchester-despite-credible-allegations/, accessed May 16, 2022

182. Upon information and belief, Defendants devised, implemented, and executed a scheme through which they gave disparate, preferential treatment and superior benefits to male and white, Caucasian employees, while knowingly and intentionally denying equal treatment and benefits to female and African-American employees, including Plaintiff.

183. Defendants discriminated against and terminated Plaintiff on the basis of her race, gender and because Plaintiff complained or opposed the unlawful conduct of Defendants related to the above protected classes.

184. Defendants retaliated against Plaintiff for engaging in protected activity.

185. The above are just some examples Defendants' unlawful discrimination and retaliation of Plaintiff.

186. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

187. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

188. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to her professional reputation.

189. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

190. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

191.   Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement.

192.   Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

193.   Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION**
**IN VIOLATION OF TITLE VII**
**(AGAINST THE DEFENDANT EMPLOYERS)**

194.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

195.   Title VII states in relevant part as follows:

(a)   Employer practices: It shall be an unlawful employment practice for an employer:

(1)   to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

196.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., as amended, for relief based upon the unlawful employment practices of the above-named **THE COUNTY OF WESTCHESTER** and **OFFICE OF THE DISTRICT ATTORNEY, WESTCHESTER COUNTY**. Plaintiff complains of **WESTCHESTER's** violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender, and/or race.

197.    **WESTCHESTER** engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of Plaintiff's race, sex, and gender, together with causing a hostile work environment based on the same.

198.    **WESTCHESTER** engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq.*, by harassing and otherwise discriminating against Plaintiff as set forth herein.

199.    **WESTCHESTER** violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION**
**IN VIOLATION OF TITLE VII**
**(AGAINST THE DEFENDANT EMPLOYERS)**

200.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

201.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

202.    Defendants **THE COUNTY OF WESTCHESTER** and **OFFICE OF THE DISTRICT ATTORNEY WESTCHESTER COUNTY engaged** in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

203.    **WESTCHESTER** violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION**
**IN VIOLATION OF 42 U.S.C. §1981**
**(AGAINST ALL DEFENDANTS)**

204.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

205.    Defendants' conduct, by and through their agents, in treating the Plaintiff in a manner unequal to other employees, discriminatorily denied Plaintiff equal treatment on the basis of her race in violation of 42 U.S.C. § 1981 in the terms, conditions and privileges of her employment.

206.    Defendants in failing to adequately investigate and remedy the treatment to which Plaintiff was subjected, despite the Defendants' knowledge of the conduct, discriminatorily denied Plaintiffs equal treatment on the basis of race in violation of 42 U.S.C. § 1981 in the terms, conditions, and privileges of their employment. Plaintiff was intentionally subjected to a racially motivated hostile work environment that was permeated with discriminatory intimidation, ridicule, and insult. The harassment Plaintiff experienced was sufficiently severe and/or pervasive so as to adversely alter her working conditions and cause her emotional distress.

207.    The discriminatory acts of the Defendants as described above were intentional and were substantially motivated on the basis of Plaintiff's race. Defendants engaged in an ongoing and continuous pattern and practice of intentional discrimination against the Plaintiff up until her unlawful termination

208.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of 42 U.S.C. § 1981.

209.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION
### IN VIOLATION OF 42 U.S.C. §1981
### (AGAINST ALL DEFENDANTS)

210.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

211.   Defendants have retaliated against Plaintiff, by inter alia, harassing her, threatening her, humiliating her, stripping her of privileges of employment that are extended to other employees, undermining her ability to effectively perform her job, and by unlawfully terminating her in violation of 42 U.S.C. §1981 for her opposition to Defendants' discriminatory practices toward her and/or her participation in criticizing and lodging complaints about Defendants' discriminatory practices.

212.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of 42 U.S.C. §1981, Plaintiff has suffered monetary and/or economic damages, including but not limited to, loss of income and benefits for which she is entitled to an award of monetary damages and other relief.

213.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct the Plaintiff has suffered mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages.

214.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of 42 U.S.C. § 1981.

215.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION, EQUAL PROTECTION AND DUE PROCESS ABUSES
## IN VIOLATION OF 42 U.S.C. §1983
## (AGAINST ALL DEFENDANTS)

216.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

217.   42 U.S.C § 1983, "Civil action for deprivation of rights," states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

218. By their conduct, as described herein, and acting under color of state law to deprive Plaintiff her right to be free of gender and race discrimination in the workplace as an employee of the State of New York, **the Defendant Employers** are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of the rights, privileges or immunities secured by the United States Constitution and federal law.

219. **The Defendant Employers** further violated Plaintiff's right to be free of retaliation for exercising her right to oppose gender and race discrimination in the terms of her employment.

220. **The Defendant Employers** subjected Plaintiff to disparate terms and conditions of employment because of her race or in retaliation for her prior complaints about their racially discriminatory mistreatment; such disparate terms and conditions include, but are not limited to:

    a.   intimidating Plaintiff and other African-American employees;

    b.   implementing and applying arbitrary and harassing disciplinary measures against Plaintiff and other African-American employees;

    c.   implementing and applying arbitrary and harassing disciplinary measures against Plaintiff and other female employees;

    d.   disfavoring African-American employees in assignments and placement within leadership and supervisory positions; and

    e.   unfavorable treatment of African-American employees in assignments and placements within leadership and supervisory positions.

221. All the foregoing actions were taken by **the Defendant Employers** in order to deprive Plaintiff and other African-American employees of employment and other contractual opportunities due to their race.

222. As a result of **the Defendant Employers'** discrimination and retaliation in violation of Section 1983, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of her contractual relationship, which provided substantial compensation and benefits.

223. Plaintiff has also suffered injuries, including physical, mental, emotional injury and pain, mental anguish, humiliation, embarrassment, distress, inconvenience, and loss of enjoyment of life because of **the Defendant Employers'** actions.

224. Plaintiff is thereby entitled to legal and equitable relief, particularly compensatory damages, and reinstatement to her position at **WESTCHESTER D.A.'s OFFICE.**

225. As alleged above, **the Defendant Employers** acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

226. Plaintiff hereby makes a claim against the Defendant Employers under all of the applicable

paragraphs of 42 U.S.C. § 1983.

227.  **The individual Defendants** acted under color of state law when they discriminated against

Plaintiff on the basis of her gender, color, and race.

228.  In so discriminating against Plaintiff, **individual Defendants** denied her of her right to equal

protection of the law, as **individual Defendants** did not discriminate against similarly situated

male employees and non-African-American employees within the State of New York.

229.  Each **individual Defendant** directly participated in the unlawful actions committed against

Plaintiff.

230.  As a direct and proximate consequence of **the individual Defendants'** actions, Plaintiff has

suffered violations of her right to equal protection of the law guaranteed by the United States

Constitution has suffered injuries, including physical, mental, emotional injury and pain, mental

anguish, suffering, humiliation, embarrassment, and compensatory injuries.

231.  Plaintiff hereby makes a claim against **the individual Defendants** under all of the applicable

paragraphs of 42 U.S.C. § 1983 and the United States Constitution.

## AS A SIXTH CAUSE OF ACTION
### FOR *MONELL* ABUSES
### IN VIOLATION OF 42 U.S.C. §1983
### (AGAINST ALL DEFENDANTS)

232.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of

this Complaint.

233.  At all relevant times herein, **WESTCHESTER** established and/or followed unwritten policies,

procedures, customs, and or practices, and those policies were the cause of violation of the

Plaintiff's constitutional rights granted pursuant to 42 U.S.C. § 1983, as well as the case of *Monell*

*v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), including those under the First,

Fourth, and Fourteenth Amendments. All of the aforementioned acts of **WESTCHESTER**, their agents, servants, and employees, were carried out under the color of state law.

234.  These unwritten policies, procedures, customs, and or practices, are employed to unconstitutionally cover-up illegal conduct by **WESTCHESTER** employees and protect those employees from civil liability and/or discipline.

235.  This policy, custom and/or practice is deliberately indifferent to the constitutional rights of individuals, such as Plaintiff, and allowed for the **individual WESTCHESTER employees** to deprive the Plaintiff of her rights under both Federal and State law.

236.  **WESTCHESTER** at all times leading up to the date in question, had a duty to the Plaintiff and the citizens and residents of the county of Westchester to make the appropriate choice among many to (1) establish, implement and follow policies, procedures, customs, and or practices which conform to and provide for the protections guaranteed to Plaintiff under the United States Constitution, including the First, Fourth, and Fourteenth Amendment; (2) select, supervise, train, control, and review the activities of all agents, servants, employees, and police officers in their employ, and (3) refrain from deliberate indifference to the Constitutional rights of the Plaintiff so as to not cause her the injuries and damages alleged herein.

237.  **WESTCHESTER** breached their duties and obligations to the Plaintiff by making the wrong choice when; (1) failing to establish, implement, and follow the correct Constitutional policies, procedures, customs, and/or practices; (2) failing to properly select, supervise, train, control, and review the activities of their agents, servants, employees, and police officers as to their compliance with Constitutional safeguards; (3) permitting their agents, servants, employees, and police officers to engage in the unlawful and unconstitutional conduct alleged herein; and (4) exercising, at a minimum, deliberate indifference towards the Constitutional protections afforded to the

Plaintiff by disregarding the numerous communications, public reports, meetings and official complaints indicating that the policies, procedures, customs, and/or practices were improper and violated the Plaintiff's Constitutional rights.

238. Furthermore, the individual prosecutors and **WESTCHESTER** employees carried out the alleged conduct in their capacities as prosecutors and under the color of state law, pursuant to the policies, procedures, customs, and/or practices of **WESTCHESTER.**

239. **WESTCHESTER** knew, or should have known, that by making the wrong choice that it was foreseeable it would and did cause people, including Plaintiff, to be injured and damaged as a result of the constitutionally impermissible conduct undertaken pursuant to the policies, procedures, customs, and/or practices, and that such decisions occurred in contravention of public policy and their legal duties and obligations to Plaintiff and other members of the media, including photographers.

240. The decisions, actions, and inactions, of **WESTCHESTER** and their agents are the legal cause of injuries to Plaintiff as alleged herein and, as a result, Plaintiff has sustained general and special damages, as well as incurring attorneys' fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

241. **WESTCHESTER** violated the above and Plaintiff suffered numerous damages as a result.

242. Plaintiff hereby makes a claim against **WESTCHESTER** under all of the applicable paragraphs of 42 U.S.C. § 1983.

**AS A SEVENTH CAUSE OF ACTION**
**FOR RACE, GENDER, AND SEXUAL DISCRIMINATION**
**IN VIOLATION OF STATE LAW**
**(AGAINST ALL DEFENDANTS)**

243. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

244. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

245. Defendants engaged in an unlawful discriminatory practice by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy discrimination of Plaintiff by her supervisors, thereby discriminating against the Plaintiff because of Plaintiff's race as well as creating a hostile work environment based on Plaintiff's membership in the aforementioned protected classes.

246. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Executive Law § 296, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

247. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, in violation of the New York State Executive Law § 296, Plaintiff suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

248. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of New York State Executive Law Section 296.

## AS AN EIGHTH CAUSE OF ACTION
## FOR RACE, GENDER, AND SEXUAL HARASSMENT
## IN VIOLATION OF STATE LAW
## (AGAINST ALL DEFENDANTS)

249.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

250.  New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (h) For an employer, licensing agency, employment agency or labor organization to subject any individual to harassment because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, domestic violence victim status, or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims."

251.  Defendants engaged in an unlawful discriminatory practice by subjecting Plaintiff to inferior terms, conditions, and privileges of employment because of Plaintiff's race, sex, and gender.

252.  As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Executive Law § 296, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

253.  As a direct and proximate result of Defendants' unlawful and discriminatory conduct, in violation of the New York State Executive Law § 296, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

254. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of New York State Executive Law Section 296.

**AS A NINTH CAUSE OF ACTION
FOR RETALIATION
IN VIOLATION OF STATE LAW
(AGAINST ALL DEFENDANTS)**

255. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

256. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

257. Defendants engaged in an unlawful discriminatory practice by, *inter alia*, harassing, threatening, humiliating, undermining and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to Defendants' discriminatory practices towards Plaintiff and other female employees and employees of color and/or Plaintiff's participation in criticizing and lodging complaints about Defendants' discriminatory practices towards Plaintiff and other employees.

258. As a direct and proximate result of Defendants' unlawful and retaliatory conduct, in violation of the New York State Executive Law §296(7), Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

259.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct, in violation of the New York State Executive Law §296(7), Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

260.   Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of New York State Executive Law Section 296.

## AS A TENTH CAUSE OF ACTION
## FOR WHISTLEBLOWER RETALIATION
## IN VIOLATION OF STATE LAW
## (AGAINST DEFENDANT EMPLOYERS)

261.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

262.   **Defendant Employers** retaliated against Plaintiff for having made complaints regarding violations of laws, rules and/or regulations presenting a substantial violation of *Brady v. Maryland,* and her refusal to participate in such activity, in violation of New York State Labor Law § 740 *et seq.*

263.   Specifically, and as set forth above, as a result of Plaintiff's multiple and repeated complaints of *Brady* violations, Plaintiff was subjected to a hostile work environment, disparate treatment retaliation and termination.

264.   Plaintiff hereby makes a claim against **Defendant Employers** under all of the applicable paragraphs of New York State Labor Law § 740.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR AIDING & ABETTING
## IN VIOLATION OF STATE LAW
## (AGAINST INDIVIDUAL DEFENDANTS)

265.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

266.  New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

267.  **Individual Defendants** knowingly and/or recklessly aided and abetted the unlawful employment practices, discrimination, and retaliation against Plaintiff in violation of the New York State Human Rights Law by actively participating in the unlawful conduct set forth above.

268.  **Individual Defendants** have discriminated against Plaintiff on the basis of her race and gender, through a pattern and practice of fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive race, and gender discrimination by the Defendants.

269.  As a direct and proximate result of **Individual Defendants'** unlawful discrimination and retaliation against Plaintiff in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

270.  As a direct and proximate result of **Individual Defendants'** unlawful discrimination and retaliation against Plaintiff in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

271. Plaintiff hereby makes a claim against **Individual Defendants** under all of the applicable paragraphs of New York State Executive Law Section 296.

### AS A TWELFTH CAUSE OF ACTION
### FOR NEGLIGENT HIRING, RETENTION, AND SUPERVISION
### IN VIOLATION OF STATE LAW
### (AGAINST DEFENDANT EMPLOYERS)

272. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

273. At all times material, **ROCAH**, **SCARPINO**, **MATHURIN**, **MIRZA** and **ADIMARI** were employees and officers of **WESTCHESTER**.

274. As **WESTCHESTER** provides, maintains, and controls the work environment in which Plaintiff was required to perform a material amount of her duties, **WESTCHESTER** owed Plaintiff a duty to ensure that individuals it employed, especially its assistant district attorneys, acted in a manner that would be considered professional and reasonable within their field.

275. It is neither reasonable nor professional to place an employee in the position of supervisor who creates an environment in which employees are discouraged by their superiors from speaking their mind for fear of malicious retaliation. It is neither reasonable nor professional to retain an employee in the position of supervisor who creates an environment in which employees are discouraged by their superiors from reporting violations of the law or otherwise speaking their mind for fear of malicious retaliation. **ROCAH**, **SCARPINO**, **MATHURIN**, **MIRZA** and **ADIMARI** have created such an environment but have never been reprimanded or replaced.

276. **ROCAH**, **SCARPINO**, **MATHURIN**, **MIRZA** and **ADIMARI** were subject to no substantive or independent supervision whatsoever.

277. Defendants' negligent hiring, supervision, and retention of **ROCAH**, **SCARPINO**, **MATHURIN**, **MIRZA** and **ADIMARI**, Plaintiff has been damaged in an amount to be determined at the time of trial

278. Plaintiff hereby makes a claim against **Defendant Employers** under all of the applicable paragraphs of New York State Labor Law § 740.

## AS A THIRTEENTH CAUSE OF ACTION
## FOR DISCRIMINATION
## IN VIOLATION OF THE NEW YORK STATE CONSTITUTION
## (AGAINST DEFENDANT EMPLOYERS)

279. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

280. The acts of the Defendants, acting under color of law, in discrimination against Plaintiff because of her gender violated her Constitutional right to equal protection as guaranteed by Article I, Section 11 of the Constitution of the State of New York.

281. The foregoing acts and conduct of Defendants were a direct and proximate cause of the injury and damage to Plaintiff and violated her rights as guaranteed by the Constitution of the State of New York.

282. Plaintiff hereby makes a claim against **WESTCHESTER** under all of the applicable paragraphs of Article I, Section 11 of the Constitution of the State of New York.

## AS A FOURTEENTH CAUSE OF ACTION
## FOR *RESPONDEAT SUPERIOR*
## IN VIOLATION OF COMMON LAW
## (AGAINST DEFENDANT EMPLOYERS)

283. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

284. **WESTCHESTER** are the employer of the individual Defendants.

285. Under the doctrine of *respondeat superior*, **WESTCHESTER** are responsible for the wrongdoing of their employees acting within the scope of their employment -- in this case, the unlawful discrimination and harassment of employees on the basis of their protected characteristics, the deliberate withholding of exculpatory evidence from members of the public whom may directly benefit from the release of the said evidence and whom suffer as a direct consequence of its being withheld and subjecting those who report such abuses to retaliatory action in the forms described hereinabove.

286. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

287. Plaintiff hereby makes a claim against **WESTCHESTER** under all of the applicable laws.

**AS A FIFTEENTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**IN VIOLATION OF COMMON LAW**
**(AGAINST DEFENDANT EMPLOYERS)**

288. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

289. Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

290. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

291. Defendants caused Plaintiff to fear for Plaintiff's own safety.

292. Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

293. Plaintiff hereby makes a claim against **WESTCHESTER** under all of the applicable laws.

**AS A SIXTEENTH CAUSE OF ACTION**

**FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**IN VIOLATION OF THE COMMON LAW**
**(AGAINST ADIMARI)**

294.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

295.     Plaintiff had an at-will contract of employment with **WESTCHESTER** and had a reasonable expectation of its continued existence.

296.     **ADIMARI** who was not party to the said contract, knew that Plaintiff was a party to the said at-will contract of employment, but intentionally, improperly, and arbitrarily procured the breach and/or cessation of same by surreptitiously and maliciously spreading false statements about Plaintiff without justification and with the specific intent to induce **WESTCHESTER** to take disciplinary action against Plaintiff and/or terminate Plaintiff's employment.

297.     **ADIMARI**'s acts of tortious interference with Plaintiff's contractual relationships were without justification and were unlawfully motivated by **ADIMARI**'s discriminatory animus against Plaintiff for her instances of engaging in protected activity.

298.     As a result of **ADIMARI**'s malicious misstatements about Plaintiff, **WESTCHESTER** terminated Plaintiff's employment.

299.     But for **ADIMARI**'s misconduct, **WESTCHESTER** would not have severed their employment relationship with Plaintiff.

300.     **ADIMARI**'s acts of tortious interference with Plaintiff's contracts have directly and proximately caused substantial damage to Plaintiff.

301.     **ADIMARI**'s acts of tortious interference with Plaintiff's contracts have directly and proximately caused and will continue to cause Plaintiff to suffer great and irreparable damage and injury, and it will be impossible to ascertain with any degree of certainty the exact amount

in money damages that has been and will be caused to Plaintiff and that Plaintiff will continue to suffer by the continued acts of **ADIMARI**.

302. As the tortious actions of the Defendants were callous, reckless, willful without justification and in total disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

**AS A SEVENTEENTH CAUSE OF ACTION**
**FOR DEFAMATION**
**IN VIOLATION OF THE COMMON LAW**
**(AGAINST DEFENDANT ADIMARI)**

303. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

304. Each of the aforementioned false, defamatory statements is about and concerns Plaintiff.

305. Each of the aforementioned false, defamatory statements was published to a broad audience.

306. Each of the aforementioned false, defamatory statements is false.

307. Defendant **ADIMARI** knew each of the aforementioned false, defamatory statements was false at the time she made them, and/or she acted with reckless disregard as to their truth or falsity, and/or at a minimum, negligently.

308. Defendant **ADIMARI** deliberately published each of the aforementioned false, defamatory statements knowing they would be disseminated to a broad audience and would harm Plaintiff's reputation and good standing.

309. Defendant **ADIMARI** acted with spite and malice when making each of the aforementioned false, defamatory statements.

310. Defendant **ADIMARI** intended that each of the aforementioned false, defamatory statements would inflict harm on the Plaintiff and, indeed, did inflict serious harm, including but not limited to severe emotional distress.

311. Defendant **ADIMARI** is liable to Plaintiff for the common law tort of defamation.

312.     Defendant **ADIMARI** made the aforementioned false, defamatory statements as part of a deliberate campaign to threaten and intimidate Plaintiff, and, indeed, repeatedly threatened to harm Plaintiff by making statements that she knew were false and defamatory, in order to try to force Plaintiff to accede to her demands by threatening to harm her reputation. Her conduct was outrageous, deliberate, malicious, and motivated by ill-will. Her defamatory statements were deliberate falsehoods, part of a prolonged effort to bully Plaintiff into acceding to her demands.

313.     As the tortious actions of the Defendants were callous, reckless, willful without justification and in total disregard of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages.

### AS AN EIGHTEENTH CAUSE OF ACTION
### FOR HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
### (AGAINST ALL DEFENDANTS)

314.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

315.     A work environment is "hostile" in violation of the NYSHRL when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)

316.     Defendants created, maintained, and subjected Plaintiff to an unlawful hostile work environment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York, and the City of New York;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority, and other benefits of employment;

D. An award of damages in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for their severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter, plus prejudgment interest;

F. An award of punitive damages, in an amount to be determined at trial, but in any event in excess of the jurisdictional limit of any other court which might otherwise have jurisdiction over this matter;

G. An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs reasonable attorneys' fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.


Dated: New York, New York
       July 19, 2022


                              Respectfully submitted,

                              THE COHRAN FIRM


                              _____
                              DEREK S. SELLS
                              Counsel for Plaintiff

45

One Exchange Plaza
55 Broadway, 23rd Floor
New York, New York 10279
(Tel No.)  (212) 553-9215
(Facsimile)  (212) 227-8763

<u>ATTORNEY'S VERIFICATION</u>

STATE OF NEW YORK   )
                                        ).SS:
COUNTY OF NEW YORK)

The undersigned, an attorney, duly admitted to practice law in the Courts of the State of New York, and hereby deposes and states that:

I am a member of THE COCHRAN FIRM, attorneys for the Plaintiffs in the above action. I have read the annexed **COMPLAINT** and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based upon the following: investigation, interviews with client, records, reports, documents, correspondence, data, memoranda, etc., contained in the file.  The reason I make this verification instead of Plaintiff, is that the Plaintiff resides out of the County of New York, wherein I maintain my offices.

I affirm that the foregoing statements are true under the penalties of perjury.

Dated: New York, New York
         July 19, 2022

DEREK S. SELLS