UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIANCA BROWN,

                              Plaintiff,

                -against-

COUNTY OF WESTCHESTER, ADEEL
MIRZA, SHAMEIKA M. MATHURIN,
MIRIAM E. ROCAH, ANTHONY A.
SCARPINO, AND CYNTHIA A. ADIMARI,

                              Defendants.

---

**OPINION & ORDER**

22-CV-06146 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Bianca Brown ("Plaintiff") commenced this action on July 19, 2022 (Doc. 1) and filed the Second Amended Complaint—the operative pleading—on April 6, 2023 (Doc. 62, "SAC"), asserting claims against Westchester County ("County"), Adeel Mirza ("Mirza"), Shameika M. Mathurin ("Mathurin"), District Attorney Miriam E. Rocah ("Rocah"), Former District Attorney Anthony A. Scarpino ("Scarpino"), and Cynthia A. Adimari ("Adimari" and collectively, "Defendants").[1] Plaintiff presses fourteen claims for relief: (1) Title VII discrimination claim against the County; (2) Title VII retaliation claim against the County; (3) Section 1983 discrimination claim against all Defendants; (4) *Monell* claim against all Defendants; (5) N.Y. Exec. Law § 296 ("NYSHRL") discrimination claim against all Defendants; (6) NYSHRL sexual harassment claim against all Defendants; (7) NYSHRL retaliation claim against all Defendants; (8) New York Labor Law ("NYLL") § 740 whistleblower retaliation claim against the County; (9)

---

[1] The Second Amended Complaint groups together Defendants Rocah, Scarpino, Mathurin, Mirza, and Adimari and refers to them as either the "Individual Defendants" or as the "Westchester Employees." (SAC ¶ 39). The Second Amended Complaint refers to the County as the "Defendant Employers." (SAC ¶ 20). Rocah and Scarpino are named as defendants in their individual and official capacities, while Mathurin, Mirza, and Adimari are named only in their individual capacities. (Compl. at 1).

NYSHRL  aiding and abetting claim against the Individual Defendants; (10) NYLL § 740 negligent hiring, retention, and supervision claim against the County; (11) common law claim for intentional infliction of emotional distress against Adimari; (12) common law claim for tortious interference with contractual relations against Adimari; (13) common law claim for defamation against Adimari and Rocah; and (14) NYSHRL claim for hostile work environment against all Defendants. (SAC ¶¶ 210-312).

Pending before the Court is the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the County, Rocah, Scarpino, Mathurin, and Adimari (the "Moving Defendants"). (Doc. 72; Doc. 73, "Cosgriff Decl."; Doc. 74, "Def. Br.").[2] Plaintiff opposed Defendants' motion (Doc. 75, "Pl. Br."), and the motion was fully submitted with the filing of the motion, opposition, and Defendants' reply papers on July 11, 2023 (Doc. 76, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff was hired as a prosecutor by the Westchester County District Attorney's Office ("WCDAO") on November 18, 2019. (SAC ¶ 42). Prior to being hired Plaintiff was interviewed by a panel of three senior WCDAO Assistant District Attorneys, including Mirza. (*Id.* ¶ 41). Throughout the beginning of Plaintiff's employment with the WCDAO, Mirza sent Plaintiff several text messages inviting her for drinks. (*Id.* ¶ 49). Plaintiff agreed to meet with Mirza at a bar on November 22, 2019. (*Id.* ¶ 52). Plaintiff alleges that Mirza, at that meeting, sexually harassed Plaintiff by telling her that the only way for Plaintiff to succeed at the WCDAO was "to

---

[2] Mirza is represented by separate counsel in this case—James Randazzo, Esq. and Richard Portale, Esq.— and did not file a motion to dismiss or otherwise move to join in the Moving Defendants' motion to dismiss. On May 8, 2022, Mirza filed an Answer to the Second Amended Complaint. (Doc. 66).

*become close* to people like [Mirza]" (*id.* ¶ 66 (emphasis in original)), and by "forc[ing] his arm around Plaintiff's waist and aggressively shov[ing] his hand down the back of her pants" as Plaintiff attempted to leave (*id.* ¶ 77). Plaintiff alleges that Mirza also made a number of statements about her race at that meeting, such as commenting, "[c]ome on, we can all tell, *for obvious reasons*, that you aren't white." (*Id.* ¶ 71 (emphasis in original)).

Plaintiff alleges that she told Victor Olds ("Olds"), "one of [the WCDAO's] highest-ranking deputy prosecutors," about Mirza's conduct. (*Id.* ¶ 85). Olds then lodged "an internal complaint" on Plaintiff's behalf. (*Id.* ¶ 86). Two high-ranking female deputy prosecutors met with Plaintiff in December 2019 to discuss Plaintiff's sexual harassment complaint. (*Id.* ¶ 87). Plaintiff alleges that Defendants took no immediate corrective action with respect to Plaintiff's complaint and instead retaliated against her by "fabricating reasons to issue negative performance reviews from her supervisors." (*Id.* ¶¶ 89-91). Plaintiff alleges that Defendants continued to retaliate against her for submitting an internal complaint by, *inter alia*, "disrupt[ing] her work schedule, saddling her with excessive additional responsibilities, tied to unreasonable deadlines pursuant to fabricating reasons for reprimands, and unjustifiably disproportionately low salary increases." (*Id.* ¶ 97). Mathurin, Plaintiff's direct supervisor in November 2020, assigned Plaintiff four times as much work as her similarly situated, non-female, non-African American co-workers. (*Id.* ¶ 103). Plaintiff alleges that Mathurin "ambushed" her in November 2020 by assigning her trials "on dates that conflicted with her vacation days, deliberately leaving her less time than needed to prepare the case." (*Id.* ¶ 104). Plaintiff cites, as another example of Mathurin's allegedly discriminatory conduct, being solely assigned to handle Pelham night court on a weekly basis, a role that all of WCDAO prosecutors otherwise covered so that any individual prosecutor was not required to work nights every week. (*Id.* ¶¶ 106-108).

Plaintiff was reassigned to Rye, New York in February 2021 which she alleges was "universally seen as a step backwards" for her career, and was assigned to report to Adimari. (*Id.* ¶¶ 112-113). Defendants assigned Plaintiff, on April 27, 2021, to investigate a matter involving a Desk Appearance Ticket charging a criminal defendant with menacing and harassment against his neighbor. (*Id.* ¶ 116). Plaintiff discovered a photo in the case file which showed the complainant neighbor choking the defendant, as well as sworn statements from witnesses indicating that the neighbor entered the defendant's property without permission and started the altercation. (*Id.* ¶¶ 117-118). Plaintiff also interviewed the arresting officer who said that his own observations and witnesses at the scene of the incident convinced him that the complainant neighbor was the initial aggressor. (*Id.* ¶¶ 119-122). Plaintiff relayed the exculpatory evidence to Adimari and Plaintiff and Adimari thereafter interviewed the arresting officer on April 28, 2021. (*Id.* ¶¶ 123, 128). Plaintiff alleges that during this interview, Adimari "coached the arresting officer into giving a different version of the facts in an attempt to cover the exculpatory evidence." (*Id.*). Plaintiff prepared a disclosure letter which disclosed the different versions of events provided by the arresting officer and she alleges that Adimari made edits to the disclosure letter that "did not accurately portray the arresting officer's statements." (*Id.* ¶¶ 132-139). Plaintiff refused to sign the revised disclosure letter and instead emailed Mathurin, the deputy division chief at the time, on May 7, 2021 to explain that she was refusing to sign the letter because she believed it was "deliberately inaccurate." (*Id.* ¶ 144). The criminal defendant's conviction was overturned, and Plaintiff alleges that Adimari reacted to the news of the conviction being overturned by "violently slamming doors and aggressively screaming statements intended to publicly impugn Plaintiff's character." (*Id.* ¶¶ 145-147). Plaintiff alleges that Adimari's conduct resulted in her being "afraid to return to the office as Plaintiff feared for her personal safety." (*Id.* ¶ 147).

On May 25, 2021, eighteen days after Plaintiff reported Adimari's allegedly inaccurate disclosure letter to Mathurin, Rocah terminated Plaintiff's employment effective July 30, 2021. Plaintiff thereafter filed a Charge of Discrimination with the Equal Employment Opportunity Commission dated October 7, 2021. (Cosgriff Decl., Ex. B, "EEOC Charge"). Plaintiff filed three Notices of Claim with the County: (i) the first Notice of Claim is dated August 13, 2021 (*id*, Ex. C, "First Notice of Claim"); (ii) the second Notice of Claim is dated October 20, 2021 (*id.*, Ex. D, "Second Notice of Claim); (iii) the third Notice of Claim is dated July 5, 2022 (*id,*, Ex. E, "Third Notice of Claim). The Third Notice of Claim was rejected by the County on August 4, 2022 as procedurally defective because it "fail[ed] to comply with New York General Municipal Law Section 50-3e(3)(a) in that the claim was not properly served as it was not served via certified mail or personal service, but rather was served via regular mail (received 7-8-2022)." (*Id.*, Ex. E).

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## II.   Documents Considered on a Motion to Dismiss

On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006));

*see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."). All parties submitted extraneous documents for the Court's consideration.

Defendants submitted six extraneous documents: (i) Plaintiff's EEOC Charge of Discrimination dated October 7, 2021 (Doc. 73-2, "EEOC Charge"); (ii) Plaintiff's Notice of Claim dated August 13, 2021 (Doc. 73-3); (iii) Plaintiff's Amended Notice of Claim dated October 20, 2021 (Doc. 73-4); (iv) Plaintiff's Notice of Claim dated July 5, 2022 (Doc. 73-5); (v) Rejection of Plaintiff's July 5, 2022 Notice of Claim (Doc. 73-5); and (vi) Plaintiff's performance review dated April 30, 2020 (Doc. 73-6). With respect to the EEOC Charge and Notice of Claim documents, filing these documents was a "precondition to filing tort [and Title VII] claims against Defendants"—those documents are, therefore, integral to the Second Amended Complaint and can be considered by the Court in adjudicating the motion to dismiss. *Benson v. Westchester Med. Ctr.*, No. 20-CV-05076, 2022 WL 2702544, at *7 (S.D.N.Y. July 12, 2022) (collecting cases). With respect to Plaintiff's performance review dated April 30, 2020, Plaintiff refers to Defendants allegedly "fabricating reasons to issue negative performance reviews from her supervisors" in the Second Amended Complaint as the basis for her retaliation claim against Scarpino, Mathurin, and Adimari. (SAC ¶ 91). Although Plaintiff mentions performance review documents, she "does not rely heavily on their terms or effects, and the Court cannot conclude that they are integral to the" Second Amended Complaint. *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2021 WL 4434935, at *21 (S.D.N.Y. Sept. 23, 2021). The Court therefore will not consider the performance review dated April 30, 2020 in analyzing the motion to dismiss.

Plaintiff submitted, as attachments to her opposition brief: (i) a document purporting to be a report dated May 10, 2023 issued by the Westchester County District Attorney's Conviction Review Unit titled "Report on the Review of Convictions Stemming from a 2017 Mount Vernon Undercover Narcotics Operation" and (ii) a news article published by The City dated May 10, 2023 titled "Westchester DA Moves To Vacate 26 Convictions Following Release of Police Whistleblower's Secret Recordings." (Doc. 75-4; Doc. 75-5). "[T]he Court declines to consider this extraneous document because it is annexed improperly as an exhibit to [Plaintiff's] memorandum of law instead of an affidavit, in violation of Local Civil Rule 7.1(a)(3)." *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-02266, 2022 WL 564048, at *4 (S.D.N.Y. Feb. 23, 2022); *see also Benson* 2022 WL 2702544, at *7. Even if this Court were to overlook the procedurally defective way in which these hearsay documents were submitted—and it does not do so—the Second Amended Complaint does not reference the Conviction Review Unit's May 10, 2023 report, nor does it reference the vacating of 26 convictions described in the news article. The documents are therefore not integral to the pleading and will not be considered at this juncture.

## ANALYSIS

Defendants press seven arguments in support of their motion to dismiss: (i) Plaintiff's state law claims should be dismissed for failing to comply with the Notice of Claim requirement; (ii) Defendants Rocah and Scarpino should be dismissed; (iii) Plaintiff has failed to allege a plausible Title VII discrimination claim; (iv) Plaintiff has failed to allege a plausible Title VII retaliation claim; (v) Plaintiff has failed to allege a plausible Section 1983 claim; (vi) Plaintiff has failed to allege a plausible *Monell* claim; and (vii) Plaintiff has failed to allege plausible common law and NYLL claims. Defendants' motion to dismiss presentation is sprawling, with poorly

organized thoughts haphazardly spread across Plaintiff's fourteen claims for relief. The Court will address the sufficiency of Plaintiff's allegations with respect to each claim for relief.

I.      Federal Claims for Relief

    A.      Title VII Claims (First and Second Claims for Relief)

        1.      Exhaustion

Exhaustion of administrative remedies "is ordinarily 'an essential element' of a Title VII claim," although "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2001)). As the Second Circuit has recognized, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001). The "central question" is whether the EEOC Charge gave that "agency adequate notice to investigate discrimination on" the bases alleged. *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008); *Williams*, 458 F.3d at 70; *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003). "Generally, courts dismiss claims that are so qualitatively different from the allegations contained in an EEOC charge that an investigation would not likely encompass the new allegations." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (citing *Mathirampuzha*, 548 F.3d at 74-78).

Defendant argues that Plaintiff's EEOC Charge dated October 7, 2021 (Doc. 73-2) "provides no facts in support of either a race or sex/gender or hostile work environment claim and therefore she failed to exhaust these claims." (Def. Br. at 9). The EEOC Charge alleges that Plaintiff was terminated because of discrimination "based on [her] race as an African American

and for my earlier complaints of sexual harassment." (Doc. 73-2 at 6). The EEOC Charge provides a detailed account of Mirza's alleged sexual harassment, as well as the interactions between Plaintiff and Adimari giving rise to the sex discrimination and hostile work environment claims. The EEOC Charge thus provides sufficient notice "to investigate discrimination on" the bases alleged in the Second Amended Complaint. *Mathirampuzha*, 548 F.3d at 77.

Accordingly, the Court holds that Plaintiff has sufficiently exhausted her Title VII claims for discrimination and retaliation.

### 2. Timeliness of Title VII Claims

Claims brought under Title VII must meet a timeliness requirement with respect to the filing of the EEOC Charge. "Title VII provides that, in these circumstances, a charge 'shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.'" *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-00410, 2021 WL 4944285, at *4 (2d Cir. Oct. 25, 2021). "This statutory requirement 'operates as a statute of limitations.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). "Claims outside this window are time-barred, except when the claims are part of a continuing violation; otherwise time-barred claims may proceed when separate acts 'collectively constitute one unlawful employment practice.'" *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). Defendants argue that "any claims that occurred 300 days prior to October 7, 2021 or before December 11, 2020 are time-barred." (Def. Br. at 9). Plaintiff does not address the timeliness of her Title VII claims in her opposition, but instead generally argues that "Defendants failed to meet their prima facie burden of demonstrating

that Plaintiff's claims are time-barred, or that the continuing violations doctrine does not apply to claims alleged to have been part of a continuing pattern of conduct." (Pl. Br. at 20).

"It has been the law of this Circuit that under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012). The continuing violation doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice, and functions to delay the commencement of the statute of limitations period until the last discriminatory act in furtherance of that broader unlawful practice." *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022). However, the doctrine "does not apply to discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other related acts of discrimination occurred within the statutory time period." *Id.* Rather, the doctrine extends exclusively "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020). Certain adverse events such as "discontinuation of a particular job assignment" or "individual sexual overtures" are considered "discrete acts not amenable to the continuing violation analysis." *Williams v. New York City Dep't of Educ.*, No. 19-CV-01353, 2021 WL 1178118, at *5 (S.D.N.Y. Mar. 29, 2021) (collecting cases).

Plaintiff alleges that the following conduct occurred before December 11, 2020, more than 300 days before the filing of the EEOC Charge: (1) she was subjected to Mirza's unwanted advances and sexual harassment (SAC ¶¶ 49-84); (2) Scarpino and Mirza retaliated against her for reporting Mirza's sexual harassment by fabricating reasons to issue negative performance reviews

(*id.* ¶¶ 89-91); and (3) Mathurin assigned her more work than her co-workers in retaliation for Plaintiff's complaint against Mirza (*id.* ¶¶ 97-110). Plaintiff does not allege that any of this conduct continued past December 11, 2020. The Court holds that the alleged conduct occurring before December 11, 2020 are discrete acts and as such, they "are not actionable independently and time-barred with respect to Plaintiff's [Title VII] claims for relief." *Reyes*, 2021 WL 310945, at *9.

The Court now considers the nature and extent of Plaintiff's Title VII claims in light of its holding that those claims cannot be based on conduct that occurred prior to December 11, 2020.

### 3.   Title VII Discrimination Claim (First Claim for Relief)

Plaintiff alleges that the following conduct occurred after December 11, 2020, or within the 300 day-period prior to filing the EEOC Charge: (1) Mathurin reassigned her to Rye, New York, which was "universally seen as a step backwards for her career" (SAC ¶ 112); (2) Plaintiff reported Adimari's *Brady* violation to Mathurin (*id.* ¶¶ 141, 144); (3) in response to Plaintiff reporting his *Brady* violation, Adimari angrily slammed doors, screamed statements "intended to publicly impugn Plaintiff's character" while Plaintiff was not in the office (*id.* ¶ 147); (4) Adimari told Plaintiff that she "ruined the case on purpose" and "I can speak to you however I please, because I'm superior to you" (*id.* ¶¶ 148, 165); and (4) Plaintiff was fired, effective July 30, 2021, in retaliation for reporting Adimari's *Brady* violation (*id.* ¶¶ 170).

"To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020). The same elements apply to a claim

for Title VII sexual harassment because sexual harassment is "a form of gender discrimination." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 585 (S.D.N.Y. 2011).

The only form of sexual harassment that Plaintiff alleges are Mirza's unwanted advances that occurred in November 2019. (SAC ¶¶ 49-82). Given that this conduct occurred more than 300 days prior to the filing of the EEOC Charge, and that it is the only alleged sexual harassment to which Plaintiff was subjected, Plaintiff's Title VII theory is dismissed to the extent that it relies on a sexual harassment theory of liability. Plaintiff has plausibly alleged, when drawing all reasonable inferences in her favor, that she was subjected to public admonishments and reprimands from Adimari because of her status as an African American woman. (SAC ¶ 154 ("Adimari did not subject Plaintiff's similarly situated non-female, non-African American co-workers to public admonishments and/or defamation for reporting potential violations of the law")). Plaintiff has further plausibly alleged that her termination was because of her membership in these protected classes. (*Id.* ¶ 189). Plaintiff has therefore plausibly alleged, when drawing all reasonable inferences in her favor, a Title VII discrimination claim under the race discrimination, sex/gender discrimination, and hostile work environment theories of liability.

Accordingly, the Court denies the motion to dismiss the first claim for relief for discrimination in violation of Title VII.

### 4. Title VII Retaliation Claim (Second Claim for Relief)

To state a claim for Title VII retaliation, Plaintiff must allege "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). "A plaintiff engages in protected activity when she (1) opposes employment practices prohibited

under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020).

Plaintiff argues that her "object[ions] to Defendants' discriminatory misconduct, as well as their *Brady* violations, constitutes protected activity." (Pl. Br. at 18). Plaintiff alleges that she "engaged in protected conduct by calling Mathurin, the deputy division chief at the time, to communicate her refusal to sign Adimari's [*Brady*] disclosure letter on the grounds that it was deliberately inaccurate" and on May 7, 2021, "again engaged in protected conduct by emailing Adimari her refusal to sign Adimari's disclosure letter on the grounds that it was deliberately inaccurate." (*Id.* ¶¶ 141, 144). "[A] number of cases in the Southern District have followed the rather simple proposition that whistleblowing is not a cognizable 'protected activity' under Title VII." *Santucci v. Veneman*, No. 01-CV-06644, 2002 WL 31255115, at *3 (S.D.N.Y. Oct. 8, 2002) (collecting cases). Plaintiff's objections to or complaints about Adimari's alleged *Brady* violations are not therefore protected activities which can give rise to a Title VII retaliation claim.

Plaintiff's argument that she engaged in protected activity by reporting Mirza's sexual harassment in December 2019 is similarly unavailing. The temporally closest adverse action to Plaintiff's sexual harassment complaint against Mirza was the disproportionately heavier workload Plaintiff alleges she received in retaliation.[4]

---

[4] To the extent that Plaintiff argues that her reassignment to Rye, New York in February 2021 or her termination in May 2021 were done in retaliation for her sexual harassment complaint against Mirza, that argument fails. Plaintiff's sexual harassment complaint against Mirza in December 2019 occurred approximately 14 months before her reassignment to Rye, New York (SAC ¶ 112) and approximately 17 months before her termination (*id.* ¶ 170). Plaintiff "may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). The Second Circuit has no bright-line rule for temporal proximity; some courts have deemed as little as three months too long to infer retaliatory motive, while others have found close enough gaps of as long as

14

Plaintiff vaguely alleges that she "observed that she was being required to do more work than her similarly situated non-African American, non-female co-workers" in July 2020 (SAC ¶ 102) and then more specifically alleges that in November 2020, "Mathurin, who was Plaintiff's direct supervisor at the time, assigned Plaintiff four (4) times as much work as her similarly situated non-female, non-African American co-workers" (*id.* ¶ 103). Plaintiff does not allege that the disproportionately heavy workload she received in retaliation for her sexual harassment complaint continued in December 2020 and beyond. Absent any such allegations, the disproportionately heavy workload Plaintiff received in September and November 2020 is untimely conduct that cannot give rise to a Title VII retaliation claim. *See Rodriguez v. New York City Dep't of Educ.*, No. 21-CV-03561, 2022 WL 4484576, at *6 (S.D.N.Y. Sept. 26, 2022) (dismissing a Title VII retaliation claim based on an increased workload where the conduct occurred more than 300 days before the EEOC Charge).

Plaintiff has failed to plausibly allege that any of the adverse employment actions she suffered after December 11, 2020—her reassignment to Rye, New York in February 2021 or her eventual termination in May 2021—were related in any way to a protected activity. Plaintiff has further failed to plausibly allege that she engaged in any protected activities after December 11, 2020. Plaintiff's conclusory allegations that she was retaliated against "for engaging in protected activity," without any attempt to identify said protected activity, are simply insufficient to support a Title VII retaliation claim. (SAC ¶¶ 191, 200).

---

eight months. *See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554-55 (2d Cir. 2001) (collecting cases). Periods of 14 and 17 months between the harassment complaint and the alleged adverse action are temporally too far apart to support causation and as such, cannot support a Title VII retaliation claim.

Accordingly, the Court grants the motion to dismiss with respect to the second claim for relief for retaliation in violation of Title VII.

B.   Section 1983 Claims (Third and Fourth Claims for Relief)

1.   Section 1983 Equal Protection Claim (Third Claim for Relief)

Defendants press two arguments in support of their motion to dismiss Plaintiff's Section 1983 claim: (i) "Plaintiff can only bring concurrent Title VII and § 1983 claims where the claims are based upon distinct legal rights" and (ii) Plaintiff has failed to allege that all of the Individual Defendants were personally involved in the conduct at issue in the Section 1983 claim. (Def. Br. at 16). With respect to the first argument, Plaintiff relies on *Igielnik v. NYC Hum. Res. Admin.*, where Judge Baer held that "[a] plaintiff can only bring concurrent Title VII and § 1983 claims where they are based on distinct legal rights. Stated differently, a Title VII claim precludes a § 1983 claim, unless the § 1983 claim is based on an alleged violation of some law other than Title VII." No. 94-CV-00810, 1996 WL 137303, at *3 (S.D.N.Y. Mar. 27, 1996). Unlike in *Igielnik*, Plaintiff here does allege that Defendants violated a law distinct from Title VII. Specifically, Plaintiff alleges that she "suffered violations of her right to equal protection of the law guaranteed by the United States Constitution." (SAC ¶ 234).

Defendants next argue that Plaintiff has failed to sufficiently meet the personal involvement pleading requirement for a Section 1983 equal protection claim. Plaintiff has failed to plausibly allege that Scarpino and Rocah were personally involved in the discriminatory conduct giving rise to the Section 1983 equal protection claim. Plaintiff alleges that Scarpino "held a supervisory role with [WCDAO], controlling many tangible aspects of Plaintiff's job duties" and that he "aided and abetted the unlawful conduct described herein." (SAC ¶¶ 28-29). Plaintiff further alleges Scarpino "took no immediate and/or appropriate corrective action" against Mirza,

and that Scarpino "refused to discipline Mirza or issue any write-up or even a verbal reprimand." (*Id.* ¶¶ 89-90). Plaintiff also alleges that Scarpino, along with Mathurin and Adimari, "responded to Plaintiff's sexual harassment complaint with a retaliatory onslaught that included, *inter alia*, fabricating reasons to issue negative performance reviews from her supervisors as well as further discriminatory conduct and comments, resulting in a hostile work environment." (*Id.* ¶ 91). Plaintiff alleges that Rocah "took no immediate and/or appropriate corrective action with respect to Adimari's hostile work environment toward [P]laintiff" and that her failure to discipline Adimari "embolden[ed] her to further retaliate against [P]laintiff." (SAC ¶¶ 162, 164). Plaintiff also alleges that Rocah "discharged Plaintiff's employment effective July 30, 2021" and was "involved in the inadequate investigation and the decision to wrongfully discharge Plaintiff." (*Id.* ¶ 170, 175). Plaintiff alleges that Rocah fired her in retaliation for Plaintiff's "complaints about Defendants' sexual and racial harassment and discrimination and actual and/or potential *Brady* violations." (*Id.* ¶ 192).

In the Second Circuit, "there is no special rule for supervisory liability" under Section 1983. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* The "violation must be established against the supervisory official directly." *Id.* A plaintiff cannot rely "on a separate test of liability specific to supervisors." *Id.* at 619. Rather, to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Id.* at 62. Plaintiff fails to allege either Scarpino's or Rocah's personal involvement with respect to the race-based and sex-based discrimination to which she was allegedly subjected. The vague and conclusory allegations that Scarpino aided and abetted unlawful conduct by failing to reprimand Mirza and

that Rocah aided and abetted unlawful conduct by failing to discipline Adimari "without more, are insufficient to allege [Scarpino's and Rocah's] personal involvement under [S]ection 1983." *Fellah v. City Univ. of New York*, No. 20-CV-06423, 2022 WL 4619902, at *6 (S.D.N.Y. Sept. 30, 2022) (collecting cases). Accordingly, the Court dismisses the Section 1983 claim—the third claim for relief—as against Scarpino and Rocah.[5]

Plaintiff does allege—in detail—how Mirza, Adimari, and Mathurin were personally involved in conduct giving rise to her Section 1983 equal protection claim. (*See* SAC ¶¶ 49-84 (allegations regarding Mirza's personal involvement); 98-112 (allegations regarding Mathurin's personal involvement; 146-169 (allegations regarding Adimari's personal involvement)). With respect to the Section 1983 equal protection claim against the County, "Congress did not intend municipalities to be held liable" under 42 U.S.C. § 1983, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). Plaintiff, however, does not allege how the County participated in a violation of Plaintiff's constitutional rights. The third claim against the County is dismissed.

Accordingly, the Court grants the motion to dismiss with respect to the third claim for relief (Section 1983 equal protection claim) against the County, Scarpino, and Rocah, and denies the motion with respect to the third claim for relief against Mirza, Adimari, and Mathurin.

---

[5] Separately, and in any event, Plaintiff's opposition fails to address the sufficiency of her Section 1983 claims against Scarpino. (*See* Def. Br.). "In a 'counseled' case, 'a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'" *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage"); *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (affirming the district court's conclusion that plaintiff abandoned certain claims when the opposition "argued at length as to why at least parts of the [defendants'] motion [to dismiss] should be denied" but did not address the abandoned claims). The Court, given Plaintiff's failure to address whether she plausibly pled Section 1983 claims against Scarpino in her opposition, can and does deem these claims abandoned as against Scarpino.

2.   Section 1983 *Monell* Claim (Fourth Claim for Relief)

Plaintiff's fourth claim for relief is brought under *Monell*.[6] Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Plaintiff's *Monell* claim is premised on vague and conclusory allegations that the County's actions were made pursuant to "unwritten policies, procedures, customs, and practices." (SAC ¶ 237). Such allegations are insufficient to state a claim under *Monell*. *See McClean v. Cnty. of Westchester*, No. 17-CV-04492, 2018 WL 6329420, at *23 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (dismissing *Monell* claim

---

[6] The Second Amended Complaint asserts Plaintiff's *Monell* claim "against all Defendants." (SAC at 32). However, because *Monell* is a vehicle for plaintiffs to assert "a claim for municipal liability," the Court will therefore construe the *Monell* claim to be raised only against the County. *See Henry v. Cnty. of Nassau*, 6 F.4th 324, 327 (2d Cir. 2021).

because plaintiff "offers only conclusory allegations . . . amounting to deliberate indifference"). Plaintiff alleges no facts to identify or otherwise describe these alleged "unwritten policies" that the County followed, nor does Plaintiff explain whether and how the conduct alleged was widespread or consistent. *See Rutherford v. Westchester Cty.*, No. 18-CV-04872, 2020 WL 433841, at \*12 (S.D.N.Y. Jan. 28, 2020) (dismissing a *Monell* claim where "Plaintiff does not describe the conduct alleged in these suits in any detail, nor explain whether and how the conduct alleged in those suits was widespread and consistent."). These generic and conclusory allegations cannot sustain a *Monell* claim.

Accordingly, because Plaintiff has not identified a municipal policy and has not alleged that she suffered a constitutional violation, Plaintiff's *Monell* claim against the County is dismissed.

## II.   State Law Claims for Relief

### 1.   NYSHRL Discrimination, Sexual Harassment, and Hostile Work Environment Claims (Fifth, Sixth, and Fourteenth Claims)

Plaintiff brings claims under the NYSHRL for discrimination (fifth claim), sexual harassment (sixth claim), and hostile work environment (fourteenth claim) against all Defendants. (*See* SAC ¶¶ 247-258; 310-312). Defendants argue that the NYSHRL claims against Scarpino and Rocah should be dismissed for failure to state a claim. (Def. Br. at 6-8). Individual liability under the NYSHRL "requires personal involvement of a defendant." *Doran v. Ives*, No. 15-CV-7217 (PKC), 2021 WL 1614368, at \*5 (S.D.N.Y. Apr. 26, 2021) (citing *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004)). As discussed above, Plaintiff fails to allege that either Rocah or Scarpino were personally involved in any of the conduct at issue in her discrimination, sexual harassment, or hostile work environment claims brought under the NYSHRL, and as such, those claims for relief must be dismissed as against Scarpino and Rocah. *See Kirkland-Hudson v. Mount*

*Vernon City Sch. Dist.*, No. 21-CV-00695, 2023 WL 2691622, at *30 (S.D.N.Y. Mar. 29, 2023) (dismissing NYSHRL discrimination and hostile work environment claims against defendants who were not alleged to be personally involved in the conduct giving rise to those claims).

Defendants also argue that the NYSHRL claims should be dismissed for failure to comply with New York's notice of claim requirements. (Def. Br. at 20-21). General Municipal Law § 50–e requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation." N.Y. Gen. Mun. Law § 50–e(1). The notice of claim requirement is only applicable to Plaintiff's state law claims brought against the County and individuals sued in their official capacities. *See Dipinto v. Cnty. of Westchester*, No. 18-CV-00793, 2020 WL 6135902, at *4 (S.D.N.Y. Oct. 19, 2020) (collecting cases). Plaintiff asserts in her First Notice of Claim, dated August 13, 2021, that her termination was "done in a discriminatory fashion based on her race as an African American" and describes the nature of her claims as "[r]ace discrimination, wrongful termination and whistle blower retaliation in violation of N.Y. Labor Law §§ 740 - 741." (Cosgriff Decl., Ex. C). Plaintiff asserts all the same facts in her Second Notice of Claim, dated October 20, 2021, and adds that she was subject to "sexual harassment by her superior, Mr. Mirza." (*Id.*, Ex. C). New York General Municipal Law § 50-e requires that Plaintiff serve a notice of claim within 90 days after a claim arises. Given that Plaintiff's First Notice of Claim was filed on August 13, 2021, only conduct that occurred after May 15, 2021 (90 days before August 13, 2021) can be actionable with respect to Plaintiff's state law claims against the County or its employees in their official capacities. The only conduct alleged in the Second Amended Complaint that took place after May 15, 2021 is Plaintiff's termination, which occurred on May 25, 2021. (SAC ¶ 170). None of the conduct giving rise to Plaintiff's

21

NYSHRL claims for discrimination, sexual harassment, or hostile work environment occurred after May 15, 2021 and as such, those claims must be dismissed for failure to comply with the notice of claim requirement as against the County. *See Asseng v. Cnty. of Nassau*, No. 14-CV-05275, 2015 WL 4621104, at *3 (E.D.N.Y. July 31, 2015) (dismissing state law claims for failure to timely serve a notice of claim).

Accordingly, the motion to dismiss the fifth (NYSHRL discrimination), sixth (NYSHRL sexual harassment), and fourteenth (NYSHRL hostile work environment) claims against the County, Rocah, and Scarpino are granted.

   2. <u>NYSHRL Retaliation and Aiding and Abetting Claims (Seventh and Ninth Claims)</u>

Plaintiff also brings claims under the NYSHRL for retaliation (seventh claim) against all Defendants and aiding and abetting (ninth claim) against the Individual Defendants. (SAC ¶¶ 259-264; 269-275). Defendants argue that these NYSHRL claims should be dismissed against Scarpino and Rocah for failure to state a claim. (Def. Br. at 6-8). Plaintiff has plausibly pled that Scarpino (i) retaliated against her by fabricating reasons to issue negative performance reviews (SAC ¶ 91) and (ii) aided and abetted Mirza's harassment of Plaintiff by failing to take remedial measures against him (*id.* ¶¶ 89-90). *See Holohan v. Newmark & Co. Real Est., Inc.*, No. 18-CV-06275, 2019 WL 4743883, at *5 (S.D.N.Y. Sept. 16, 2019) (Nathan, J.) (allegations that a supervisor's negative performance review preceded termination "give rise to a plausible inference that [supervisor-defendant] participated in legally actionable retaliatory conduct"); *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014) (allegations that a supervisor failed to take remedial measures to a harassment complaint was sufficient to state a NYSHRL aiding and abetting claim). Plaintiff, as with Defendant Scarpino, plausibly alleges that Rocah (i) retaliated against her by terminating her employment (SAC ¶¶ 188, 193) and (ii) aided and abetted Adimari's

harassment of Plaintiff by failing to take remedial measures against her (*id.* ¶¶ 162-164). Plaintiff has plausibly alleged, when drawing all inferences in her favor, NYSHRL retaliation and aiding abetting claims against Scarpino and Rocah.[7]

With respect to the notice of claim requirement, Plaintiff does not allege that any of the conduct giving rise to the aiding and abetting claims occurred within ninety days of the service of the First Notice of Claim. Plaintiff's termination, which Plaintiff alleges was retaliatory, did occur within ninety days of her First Notice of Claim. However, as the Court discussed above, Plaintiff does not allege that she engaged in any protected activities that is temporally proximate to her termination and as such, her termination does not give rise to a NYSHRL claim. None of the other allegedly adverse employment events alleged in the Second Amended Complaint occurred within ninety days of the service of the First Notice of Claim and thus, Plaintiff has failed to timely serve a Notice of Claim with respect to her NYSHRL retaliation and aiding and abetting claims.

Accordingly. The motion to dismiss the seventh (NYSHRL retaliation) and ninth (NYSHRL aiding and abetting) claims are denied as against Scarpino and Rocah in their individual capacities.[8] The motion to dismiss the seventh (NYSHRL retaliation) claim is granted as against the County and Scarpino and Rocah in their official capacities and the ninth (NYSHRL aiding and abetting) claim is granted as against Scarpino and Rocah and their official capacities.

---

[7] "Unlike Title VII, which excludes discrete discriminatory acts that occurred more than 300 days before the filing of an EEOC charge, NYSHRL and NYCHRL each has a three-year statute of limitations period." *Zuckerman v. GW Acquisition LLC*, No. 20-CV-08742, 2021 WL 4267815, at *7 (S.D.N.Y. Sept. 20, 2021). Defendants do not argue, and the Court therefore does not consider, whether Plaintiff's NYSHRL claims are time-barred under the applicable statute of limitations.

[8] Defendants Scarpino and Rocah are sued in both their individual and official capacities. The notice of claim requirement applies to municipal defendants (such as the County) as well as individual defendants that are sued in their official capacity (such as Scarpino and Rocah). *See Brooks v. Cnty. of Nassau*, 54 F.Supp.3d 254, 258 (E.D.N.Y.2014) ("It is well settled that the failure to file a notice of claim bars state claims against individual defendants sued in their official capacities.") Accordingly, the NYSHRL retaliation and aiding and abetting claims are dismissed against Scarpino and Rocah in their official capacities, but those claims will proceed as to Scarpino and Rocah in their individual capacities.

3.  <u>NYLL Claims (Eighth and Tenth Claims)</u>

Plaintiff presses claims for whistleblower retaliation and negligent hiring, retention, and supervision "under all of the applicable paragraphs of New York State Labor Law § 740." (SAC ¶¶ 268, 282). Defendants argue that Plaintiff's eighth (whistleblower retaliation) and tenth (negligent hiring, retention, and supervision) claims for relief brought under NYLL § 740 fail as a matter of law because (i) "[t]he protection of § 740 is triggered only by a violation of law that creates and presents a substantial and specific danger to the public health and safety" (Def. Br. at 22) and (ii) because NYLL § 740 "does not apply to public employers" (Reply at 8).

NYLL § 740(2) prohibits an employer from taking retaliatory action against an employee when that employee "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety." NYLL § 740(2)(a). Plaintiff has failed to plausibly allege that Adimari's alleged *Brady* violation in a single criminal case somehow poses a substantial and specific danger to the public health and safety. *See Rinaldi v. Mills*, No. 21-2630, 2022 WL 17480081, at *2 (2d Cir. Dec. 7, 2022) (affirming the dismissal of a whistleblower claim brought under NYLL § 740 where the plaintiff failed to plead that the defendant's practices posed a substantial and specific danger to the public health or safety); *Romero v. Floris Constr., Inc.*, No. 16-CV-04282, 2017 WL 5592681, at *7 (E.D.N.Y. Nov. 20, 2017) (defendant was not liable for a NYLL § 740(2) violation where plaintiff alleged defendants' "negligent hiring, supervision, and retention of the employee who allegedly assaulted [p]laintiff" did not rise to the level of "substantial and specific danger to the public health and safety").

Separately, and in any event, Plaintiff's claims brought against the County under NYLL § 740 must be dismissed as a matter of law because "[i]t is clear that [NYLL § 740] does not apply to public employers." *Ramsaroop v. Dep't of Educ. Of City of New York*, No. 20-CV-04947, 2022 WL 376029, at *9 (S.D.N.Y. Feb. 8, 2022) (citing *Hawkins v. New York State Off. Of Mental Health*, No. 170CV-00649, 2019 WL 4520801, at *7 (S.D.N.Y. Sept. 19, 2019)); *see also Eggleston v. City of Binghamton*, No. 3:20-CV-00056, 2020 WL 5232075, at *3 (N.D.N.Y. Sept. 2, 2020) (plaintiffs' NYLL claims against the City of Binghamton "must be dismissed because those provisions do not apply to public employers); *Pincus v. New York City Dep't of Educ.*, No. 16-CV-05253, 2017 WL 10187671, at *8 (E.D.N.Y. Nov. 30, 2017) ("Section 740, however, does not apply to public employers like the [New York City Department of Education].").

Accordingly, the Court dismisses Plaintiff's eighth (whistleblower retaliation) and tenth (negligent hiring, retention, and supervision) claims for relief brought under NYLL § 740.

> ### 4. Common Laws for Intentional Infliction of Emotional Distress and Tortious Interference with Contractual Relations (Eleventh and Twelfth Claims)

Plaintiff asserts common law claims only against Adimari for intentional infliction of emotional distress (eleventh claim) and tortious interference with contractual relations (twelfth claim). (SAC ¶¶ 283-298). Defendants argue that these claims should be dismissed because they were not included in Plaintiff's First or Second Notice of Claim. (Def. Br. at 22). As the Court held above, the notice of claim requirement is inapplicable to individual defendants sued in their individual capacity. The notice of claim requirement is therefore inapplicable to Adimari, an individual defendant who is sued only in his individual capacity. Plaintiff has plausibly alleged, when drawing all reasonable inferences in her favor, that Adimari's conduct towards her was "extreme and outrageous" and that Adimari's "breach of her duties to Plaintiff" caused injury. (SAC ¶¶ 283-288). Plaintiff has further plausibly alleged that Adimari tortiously interfered with

her employment contract by "spreading false information about [her] without justification and with the specific intent to induce [the County] to take disciplinary action against Plaintiff and/or terminate Plaintiff's employment." (*Id.* ¶ 291).

Accordingly, the motion to dismiss is denied with respect to the eleventh (intentional infliction of emotional distress) and twelfth (tortious interference with contractual relations) claims for relief.

### 5.  Common Law Defamation Claim (Thirteenth Claim)

Plaintiff presses, as her thirteenth claim for relief, a defamation claim against Adimari and Rocah arising from Adimari's "defamatory accusation that '[Plaintiff] ruined the case on purpose'" (SAC ¶ 148). Plaintiff alleges that Adimari made this statement on May 7, 2021 "[w]ith an entire division of Plaintiff's co-workers assembled. Defendants argue, with respect to the defamation claim, that it is (i) time-barred and (ii) "does not constitute defamation because it is a statement of opinion of Plaintiff's work performance that cannot objectively be proven true." (Def. Br. at 22).

"The statute of limitations in New York for defamation is one year from the date of the publication of the statement." *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-03416, 2019 WL 3202747, at *13 (S.D.N.Y. July 16, 2019) (citing N.Y. C.P.L.R. § 215(3)). The only allegedly defamatory communication that is adequately identified is Adimari's May 7, 2021 statement that Plaintiff "ruined the case on purpose" by reporting his alleged *Brady* violation. (SAC ¶ 148). This statement was made more than one year from the filing of this action July 19, 2022, and as such, it is time-barred.[9] Separately, and in any event, Plaintiff's defamation claim fails as a matter of law

---

[9] Plaintiff's defamation claim cannot be predicated off some other unidentified statements because, as Judge Karas held in *Ahmad*, "a pleading is only sufficient [with respect to a defamation claim] if it adequately identifies the purported communication and provides an indication of who made the communication, when it was made, and to whom it was communicated." 2019 WL 3202747,

because Adimari's statement constitutes an "evaluation of an employee's performance" and such a statement "is a matter of opinion that cannot be objectively categorized as true or false and cannot be actionable" *Ulrich v. Moody's Corp.*, No. 13-CV-0008, 2014 WL 12776746, at *11 (S.D.N.Y. Mar. 31, 2014); *Brattis v. Rainbow Advert. Holdings, L.L.C.*, No. 99-CV-10144, 2000 WL 702921, at *4 (S.D.N.Y. May 31, 2000) ("Under New York law, the evaluation of an employe's performance, even an unsatisfactory evaluation, is a matter of opinion that cannot be objectively categorized as true or false and cannot be actionable."). Adimari's statement constituted unsatisfactory evaluation of Plaintiff's performance on a case that was assigned to her, and such statements are, "as a matter of law, nonactionable expression of opinion." *Brattis*, 2000 WL 702921, at *4 (collecting cases).

Accordingly, the Court grants the motion to dismiss with respect to Plaintiff's thirteenth claim for relief for common law defamation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Court GRANTS the motion to dismiss with respect to: (1) the second claim for relief (Title VII retaliation); (2) the third claim for relief (Section 1983 equal protection) against the County, Scarpino, and Rocah; (3) the fourth claim for relief against the County under *Monell*; (4) the fifth claim for relief (NYSHRL discrimination) against the County, Scarpino (individual and official capacities), and Rocah (individual and official capacities); (5) the sixth claim for relief (NYSHRL sexual harassment) against the County, Scarpino (individual and official capacities),

---

at *14. The only allegedly defamatory statement for which Plaintiff identifies the communication and provides an indication of when it was made and to whom it was communicated is Adimari's May 7, 2021 statement that Plaintiff "ruined the case on purpose." (SAC ¶ 148).

and Rocah (individual and official capacities); (6) the seventh claim for relief (NYSHRL retaliation) against the County, Scarpino (official capacity only), and Rocah (official capacity only); (7) the eighth claim for relief (NYLL § 740 whistleblower retaliation) against the County; (8) the ninth claim for relief (NYSHRL aiding and abetting) against Scarpino (official capacity only), and Rocah (official capacity only); (9) the tenth claim for relief (NYLL § 740 negligent hiring, retention, and supervision) against the County; (10) the thirteenth claim for relief (common law defamation) against Adimari and Rocah (individual and official capacities); (11) the fourteenth claim for relief (NYSHRL hostile work environment) against the County, Scarpino (individual and official capacities), and Rocah (individual and official capacities).

The motion to dismiss is DENIED with respect to (1) the first claim for relief (Title VII discrimination) against the County; (2) the third claim for relief (Section 1983 equal protection) against Adimari and Mathurin; (3) the fifth claim for relief (NYSHRL discrimination) against Adimari and Mathurin; (4) the sixth claim for relief (NYSHRL sexual harassment) against Adimari and Mathurin; (5) the seventh claim for relief (NYSHRL retaliation) against Adimari, Mathurin, Scarpino (individual capacity only), and Rocah (individual capacity only); (7) the ninth claim for relief (NYSHRL aiding and abetting) against the Adimari, Mathurin, Scarpino (individual capacity only), and Rocah (individual capacity only); (8) the eleventh claim for relief (common law intentional infliction of emotional distress) against Adimari; (9) the twelfth claim for relief (common law tortious interference with contractual relations) against Adimari; and (10) the fourteenth claim for relief (NYSHRL hostile work environment) against Adimari, and Mathurin.

The Moving Defendants are directed to file an Answer to the Second Amended Complaint within 14 days of the issuance of this Opinion & Order. The Clerk of Court is respectfully directed to terminate the motion sequence at Doc. 72.

**SO ORDERED:**

Dated:   White Plains, New York
         January 2, 2024

_____
PHILIP M. HALPERN
United States District Judge